Richmond

JERRY LYNN SNEED

v.

MORENGO, INC.,

AND

UNINSURED EMPLOYERS' FUND

No. 1859-93-4

Decided November 8, 1994

COUNSEL

Craig A. Brown (Ashcraft & Gerel on brief), for appellant.

Christopher D. Eib, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Mary Yancey Spencer, Deputy Attorney General, on brief), for appellee.

OPINION

BENTON, J.—While employed by Morengo, Inc., Jerry Lynn Sneed was injured in a work-related accident for which he received workers' compensation benefits.[1] Later, he was injured in another work-related accident while working for a different employer. Sneed settled his claim for workers' compensation benefits with the second employer and brought a new claim for additional benefits against Morengo. Sneed appeals from the decision of the commission denying additional benefits from Morengo and argues that the commission erred (1) in ruling that his settlement of the second claim, without participation by Morengo, barred his claims for benefits from Morengo, (2) in finding that he failed to prove that his physical and psychological problems were related to the injury by accident he suffered while employed by Morengo, and (3) in finding that he failed to prove that his temporomandibular joint (TMJ) syndrome was related to the injury by accident he suffered while employed by Morengo. We affirm the commission's decision.

I.

In December 1986, while Sneed was employed by Morengo as a blow torch operator, he slipped and fell while working on a beam. Sneed struck his head, causing a fracture of his nose and a laceration over his eye. He also injured his knee and suffered burn inju-

---

[1] Morengo was uninsured at the time of the accident and no longer does business. The claim against Morengo has been defended by the Uninsured Employers' Fund ("the Fund"), which is represented by the Office of the Attorney General. Appellee is denoted as either "Morengo" or "the Employer."

ries to his neck and knee. Although Sneed was not hospitalized, he was totally disabled until May 1987, when he returned to selective employment at a restaurant. Morengo accepted the claim as compensable.

Sneed later began to suffer from debilitating headaches and successfully applied to the commission for an award of temporary total disability benefits beginning in August 1987. The medical records established that in May 1989, Sneed entered a hospital in Fredericksburg where Dr. Mark Miller attributed Sneed's depression and muscle tension headaches to the 1986 accident. Dr. Miller also noted that Sneed may have been biologically predisposed to depression due to his early history of a nervous breakdown, and Dr. Miller reported that Sneed had stated he "had been depressed all his life." The commission found that Sneed had suffered from post-traumatic depression from the time of the 1986 injury and concluded that the employer was liable for Sneed's hospitalization.

In November 1989, Sneed moved to Rocky Mount, Virginia, and he obtained full-time employment with the Home Shopping Network (HSN) in its Salem warehouse. Sneed also began treatment in Roanoke with Dr. Don Bivins, a neurologist. In reciting the history of his injury, Sneed told Dr. Bivins that he "was rendered unconscious by the accident." Dr. Bivins reported that Sneed experienced mild to moderate tenderness on deep palpation of the temporomandibular joints and a modest degree of muscle spasm in the cervical area on the right. Although Dr. Bivins had none of Sneed's medical records, he expressed concern that Sneed may have a temporomandibular joint syndrome, which also could have arisen from the accident in December of 1986. Dr. Bivins recommended that Sneed treat primarily with his psychiatrist, Dr. William Clarkson, and also referred Sneed to Dr. William Swann, D.D.S., for an evaluation to determine whether Sneed had post-traumatic TMJ syndrome.

Dr. Clarkson observed that Sneed's depressive symptoms may have increased when Sneed ran out of medication prescribed by Dr. Miller. Under treatment from Dr. Clarkson, Sneed's depression stabilized, and he was able to continue working. Sneed testified that while he was employed by HSN, he continued to experience headaches, neck stiffness, and muscle spasms in his chest, ribs, and upper back.

On September 18, 1990, Sneed argued with his supervisor at HSN about his tardiness and he walked off the job. Two days later, Sneed applied for additional workers' compensation benefits alleging renewed disability stemming from the 1986 injury. Sneed returned to HSN approximately two weeks later and resumed work after resolving the conflict with his supervisor. During this time, Sneed was involved in an automobile accident.

Shortly after he returned to his employment at HSN, Sneed reported that he injured his back while reaching to retrieve a seventy to seventy-five pound box. He went to the hospital the evening of the injury. Although Sneed advised Dr. Gavin, his treating physician for that injury, that his back was better, Dr. Gavin advised Sneed not to work for four days. Sneed was scheduled to return to Dr. Gavin on October 25, 1990, but before the appointment Sneed suffered a nervous breakdown and was admitted to Roanoke Valley Psychiatric Center by Dr. Clarkson. Sneed was hospitalized for ten days. Sneed has not worked since the 1990 accident.

Dr. Clarkson related Sneed's hospitalization to the 1990 injury at HSN, but stated:

I would definitely say that the period of hospitalization . . . was causally related to his injury [at HSN]. . . . I have been continuing to see [Sneed] for similar supportive contacts after the accident [at HSN] as I had been before. In other words[,] I would have to say the outpatient contacts prior to the [HSN] accident were certainly related to the 1986 incident and the outpatient visits from November [1990] on are at a similar frequency. I can thus make no separation of the outpatient appointments from November [1990] up until the present time from what I probably might have been seeing him regardless of the [HSN] accident in October.

Sneed filed a workers' compensation claim against HSN as a result of the 1990 incident. The application for benefits did not name Morengo as a party in the matter. When deposed during Sneed's claim against HSN, Dr. Clarkson expressed his impression that the 1986 injury was "life threatening" and stated that Sneed's hospitalization in October 1990 was a "blip" of activity in the treatment Sneed had been receiving prior to the 1990 incident at HSN. Clarkson also testified, however, that he could not sepa-

rate the 1990 back injury problem from Sneed's psychological problems.

In June 1991, the commission approved a settlement of Sneed's claim against HSN arising from the 1990 incident. The order states that HSN paid Sneed $10,500, that HSN denied any liability to Sneed, and that HSN was "not responsible for any medical bills or other costs . . . incurred for mental or emotional treatment."

Sneed returned to Fredericksburg in 1992 and began receiving treatments from Dr. Wayne L. Whitley, a dentist, who reported that Sneed was totally disabled from TMJ. Sneed then requested the commission to docket for hearing the application he filed in 1990 alleging a change in condition. At the evidentiary hearing, Sneed testified that he did not have any back or leg pain immediately following the 1986 accident. He did not begin to experience those pains until a year and one-half later.

Sneed also testified that he had suffered non-work-related chest, pelvis, and back injuries which predated his 1986 injury. He also disclosed an arthritic condition in his knees and a psychiatric hospitalization in 1975. Sneed testified that his chest had hurt since a car accident in 1974 in which his pelvis and chest were injured. In the 1970s, Sneed was in another car accident in which he fractured an ankle and a knee. In 1975, Sneed suffered a nervous breakdown and a drug overdose and was hospitalized for a month. Sneed also admitted that he could not recall telling any of his physicians since 1986 about those other injuries and events when relating his medical history to them. Sneed testified that since 1986 he has suffered from depression, was involved in a car accident, had his gall bladder removed, had peptic ulcer disease and gastritis, and suffered from a respiratory infection.

## II.

On this evidence, the deputy commissioner awarded Sneed temporary total disability benefits on a continuing basis beginning November 20, 1991 because of the TMJ syndrome. The deputy commissioner ruled that the TMJ condition predated the 1990 injury and was not covered by the settlement with HSN. However, the deputy commissioner also ruled that Sneed's other physical and psychological claims were forever barred because Sneed set-

tled an intervening workers' compensation claim against a different employer. The deputy commissioner reasoned that many of the complaints raised in the HSN case were related to Sneed's claims against Morengo. The deputy commissioner held that "the causal relationship of the depression and back condition was negotiated and finitely settled . . . [and that Sneed] cannot now return to this commission having carved out his second injury difficulties by stating that they were not a causative reason for his continuing problems."

The commission reversed the deputy commissioner's ruling that Sneed's TMJ syndrome was compensable by Morengo. The commission found that Sneed had not been treated for TMJ prior to February 1991. In addition, the commission also held that in light of mistaken assumptions in Dr. Whitley's report, Dr. Whitley's conclusion that Sneed's TMJ syndrome was related to the 1986 injury was not persuasive. The commission further found that Sneed's physical and psychological problems were caused by the 1990 injury by accident Sneed suffered while employed by HSN. In addition, the commission affirmed the deputy commissioner's ruling that Sneed's settlement of the 1990 injury by accident claim with HSN barred his recovery against Morengo for his remaining physical and psychological problems.

Sneed challenges the commission's conclusion that the settlement with HSN barred further recovery from Morengo for the 1986 accident. However, the commission initially found that Sneed failed to prove he was still disabled from the 1986 injury. If credible evidence supports that finding, the settlement-bar question is moot. The result follows because even if Sneed's settlement of his claim against HSN did not bar his recovery against Morengo, he continued to bear the burden of proving by a preponderance of the evidence that the injury for which he seeks compensation arose out and in the course of the 1986 accident. *See* Code § 65.2-101 (defining injury); *R & T Invs., Ltd. v. Johns*, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984).

### III.

In reviewing the commission's decision, we are guided by well-settled principles. "[I]t is fundamental that a finding of fact made by the [c]ommission is conclusive and binding upon this court on review." *Commonwealth v. Powell*, 2 Va. App. 712, 714,

347 S.E.2d 532, 533 (1986). *See also* Code § 65.2-706. "[T]hat contrary evidence may be in the record is of no consequence if there is credible evidence to support the [c]ommission's findings." *Russell Loungewear v. Gray*, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986). "A question raised by conflicting medical opinion is a question of fact." *Powell*, 2 Va. App. at 714, 347 S.E.2d at 533.

■ The commission did not err in discounting the opinions of physicians who attributed Sneed's disability to the 1986 injury. Those physicians did not know of Sneed's complete medical history. Whenever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion. *See Clinchfield Coal Co. v. Bowman*, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985). Significantly, Sneed conceded at the evidentiary hearing that he did not recall telling any of his treating physicians of his long history of physical and psychological problems which began in the early 1970s. Dr. Bivins concluded in 1990 that Sneed's injuries were connected with the 1986 accident even though he did not have the benefit of Sneed's medical records from either the 1970s or after the 1986 injury. Although another doctor characterized Sneed's problems as "chronic," several non-work-related sources of Sneed's difficulties are readily apparent from the record. These include car accidents, a history of depression and nervous breakdowns, drug abuse, and serious illness. Indeed, one doctor noted in his records that Sneed told him that he had been depressed "all his life."

The commission's finding that Sneed failed to prove that his disability was related to the 1986 injury by accident is supported by credible evidence. Because we find credible evidence in the record to support the commission's findings, both with respect to Sneed's orthopedic and psychological problems, we do not address the merits of whether Sneed's settlement of his claim against HSN served to bar his claim against Morengo for compensation.

### IV.

The deputy commissioner found that Sneed's TMJ syndrome was causally related to the 1986 accident; however, the commission reversed that finding. Applying the same standard to these findings of fact as we did to Sneed's challenge to the commission's

other findings, we conclude that credible evidence exists in the record to prove that the TMJ syndrome is unrelated to the 1986 injury by accident.

No physician attributed Sneed's disability to TMJ syndrome until more than three years after the 1986 incident. Dr. Bivins, who in 1990 was the first to suggest the possibility that Sneed suffered from TMJ syndrome, stated only that Sneed "*may* have [TMJ] syndrome, which also *could* have arisen from the accident in December 1986." (emphasis added). Nothing in Dr. Bivins's report indicates that Sneed disclosed the non-work-related accidents he suffered before and after the 1986 incident. Furthermore, the commission's finding that Dr. Thomas Scordas referred only to trauma to the TMJ joint without giving a specific date is supported by the doctor's report.

In finding for Sneed, the deputy commissioner relied primarily upon Dr. Whitley's conclusion that "all of [Sneed's] symptoms directly and indirectly stem from the massive soft tissue injuries he received in the original accident on 12/19/1986." As the commission observed, however, Dr. Whitley's report suggests he believed Sneed's total disability commenced in 1986 and continued. That belief was inaccurate. Moreover, Dr. Whitley's report gives no indication he was aware of Sneed's medical history apart from the knowledge attributable to Sneed. That evidence, in combination with Sneed's admission that he could not recall whether he told his treating doctors of his full medical history before treatment, was sufficient for the commission to find that Sneed failed to carry his burden of proving that the TMJ syndrome resulted from the 1986 injury by accident.

 Notwithstanding the evidence that supports the commission's findings, Sneed asks that we conclude that the nature of his other injuries could not have caused his TMJ syndrome and that, therefore, the TMJ syndrome must have resulted from the 1986 injury by accident. The evidence of Sneed's intervening injuries and earlier injuries is incomplete. In addition, his medical history was only sporadically related to his many treating physicians. In essence, Sneed asks that we reevaluate the evidence in this case and draw our own conclusions of fact. It is well established that an appellate court "do[es] not review the weight or preponderance of the evidence . . . except to consider whether there exists sufficient credible evidence to sustain the findings." *Virginia Dep't of*

*State Police v. Talbert*, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985). *See also* Code § 65.2-706.

Lastly, Sneed argues that the statement made at the evidentiary hearing by counsel for the Fund that "the Fund has no intention of not paying the doctor for TMJ" is of some significance in this case. We disagree. The commission did not deem counsel's statement to be a stipulation. Moreover, Code § 65.2-1203(A) limits an award from the Fund to those circumstances where "the [c]ommission determines that . . . the claim is compensable." In the absence of a determination of liability by the commission, counsel's statement is of no consequence.

### V.

For the foregoing reasons, we hold that credible evidence in the record supports the commission's finding that Sneed failed to prove that his injuries were related to his 1986 injury by accident. Accordingly, the judgment of the commission is affirmed.

*Affirmed.*

Willis, J., and Elder, J., concurred.