COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


HOWELL METAL COMPANY/COMMERCIAL METALS
 COMPANY AND HIGHLANDS INSURANCE GROUP
                                        OPINION BY
v.    Record No. 1992-00-3      JUDGE RUDOLPH BUMGARDER, III
                                        MARCH 27, 2001
MICHAEL BRANDON ADAMS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Thomas G. Bell, Jr. (Timberlake, Smith,
        Thomas & Moses, P.C., on brief), for
        appellants.

        Linda D. Slough (Brian J. McNamara; Chandler,
        Franklin & O'Bryan, on brief), for appellee.


     Howell Metal Company and its insurer appeal the Workers'

Compensation Commission's decision that psychiatric treatment

for Michael Brandon Adams was causally related to his work

injury.  We conclude the evidence did not support the finding

and reverse the decision.

     On October 21, 1998, the employee received chemical burns

to his feet, and the employer accepted the claim as compensable.

In March 1999, the employee's treating physician referred him to

a psychiatrist.  The employee filed an application for payment

of psychiatric services claiming the need for treatment arose

out of his work injury.  The deputy commissioner denied the

application finding that the employee had not established the

psychiatric treatment was "causally connected to his chemical burns of 1998." The full commission reversed and awarded psychiatric benefits for as long as necessary.

The employee's treating physician, Dr. Steven L. Phillips, noted on February 8, 1999: "I think he has more problems with anxiety and depression associated with this injury than he does have physical injury itself. I think the sympathetic response might be tied in with his emotional response to the entire affair and that he might benefit from treatment of anxiety and depression." The doctor prescribed an anti-depressant.

On February 17, 1999, Dr. Phillips assessed the employee's condition: "Bilateral burns to feet with persisting symptoms with some perpetuation probably resulting from anxiety and depression related to the injury." On February 25, 1999, the assessment was similar: "Bilateral foot burns with prolonged symptoms possibly contributed to by anxiety/depression related to the injury."

On March 31, 1999, Dr. Phillips referred the employee to Dr. Jeffrey K. Lightner, a psychiatrist. Dr. Phillips explained that he referred the employee "for a psychiatric evaluation in order to properly define his condition and also to help determine how much of it is related to his work injury. I realize that this latter task may be difficult but may be very important to the patient as well as his employer." In the letter, Dr. Phillips noted, "There may be an element of

-

sympathetically maintained pain involved here . . . ." He concluded, "I felt it wise to have him see a professional for accurate diagnosis and treatment if needed."

Dr. Lightner diagnosed the employee on April 1, 1999 with bipolar paranoid reaction. He never made a narrative report of his diagnosis. The employee's counsel solicited Dr. Lightner's opinion on the causal relation in a one-question letter: "Is it your opinion, to a reasonable degree of medical certainty, that the treatment you are providing Michael Adams is reasonable, necessary, and causally related to his work injury of October 21, 1998?" The letter provided spaces to check either "yes" or "no." Dr. Lightner did not mark one of the two indicated answers. Instead, he interlined, "to some degree, but I don't know patient's mental state prior to the injury," and drew an arrow to the space for indicating the "yes" response.

Dr. Phillips's notes and letter show that he had not reached a decision about the cause of the employee's psychiatric condition. Perplexed by the employee's condition, he referred the employee to a psychiatrist and deferred to that specialist for diagnosis and treatment. Dr. Phillips's note of May 3, 1999, made after Dr. Lightner's diagnosis, stated the disorder was not related to the injury. The employee's "affective disorder itself is not a work related illness[,] however his work injury may have had some effect on it." In his final

-

response to counsel's inquiry, he could only say that the referral itself was "possibly" related to the injury.

The parties argue opposing interpretations of Dr. Lightner's response to counsel's questionnaire. We need not choose between them because either would be insufficiently based. Dr. Lightner qualified his response "but I don't know patient's mental state prior to the injury." The response made clear the doctor could not answer the question without the patient's history for the last ten years. He could not answer the question in the format in which it was posed because he did not have sufficient medical history upon which to base an opinion.

Dr. Phillips's note of May 3, 1999 also noted that the lack of adequate history prevented him from giving an opinion on causation: "I explained to [the employee] that I would be unable to say how much effect that the work accident had since I have no knowledge of his status prior to three months following the injury." In their concluding opinions, both doctors indicated they needed additional medical history before rendering an opinion on the relation of the psychiatric condition to the injury. The commission erred in finding the medical evidence credible when it lacked a sufficient base.

Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985), held the commission erred in attributing weight to medical evidence based upon a faulty premise. The

-

Court reversed the commission's finding that the doctor was credible because the doctor's opinion was based on erroneous information supplied by the claimant. "In Dr. McIlwain's first report, he assumed that the condition he discovered resulted from the 1978 accident. The basis for this assumption was the incomplete information furnished by Bowman." Id. at 251-52, 329 S.E.2d at 16 (emphasis in original). "Whenever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994) (citation omitted). Drs. Phillips's and Lightner's reports were insufficient to establish a causal connection between the employee's work injury and his psychiatric condition beyond mere conjecture.

The employee testified that ten years before the accident he began to drink heavily after his six-month-old son died. He admitted himself to a 30-day in-patient alcohol treatment program, but he had not had any problems requiring psychiatric treatment since then. He had not been diagnosed with either bipolar disorder or paranoia before Dr. Lightner's diagnosis. An employee's testimony may be considered in determining causation, particularly where the medical evidence is inconclusive. Russell Stover Candies v. Alexander, 30 Va. App.

-

812, 826, 520 S.E.2d 404, 411 (1999).  However, the employee's statement that he did not receive psychiatric treatment for ten years does not constitute evidence that his current condition was causally related to his work injury.  Causation is a factual question that must be supported by credible evidence.  McPeek v. P.W. & W. Coal Co., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969).

We conclude that neither the medical evidence nor the employee's testimony is sufficient to prove causation.  "If the expert medical witnesses cannot testify that it is at least more probable than not that the disease arose out of and in the course of employment, compensation must and should be denied, not because the law requires more of medicine than it can produce, but because the law requires more than simply proof that the disease 'might' have been caused by a particular result."  Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 224, 372 S.E.2d 411, 416 (1988).  Accordingly, we reverse.

Reversed.

-