COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


AMELIA SAND COMPANY AND ROCKWOOD
 CASUALTY INSURANCE COMPANY

                                                                    OPINION BY
v.        Record No. 2902-03-2                        JUDGE ROBERT P. FRANK
                                                                    JULY 6, 2004
MICHAEL E. ELLYSON


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Iris W. Redmond (Midkiff, Muncie & Ross, on briefs), for
            appellants.

            Zenobia J. Peoples for appellee.


      Amelia Sand Company and its insurer, Rockwood Casualty Insurance Company,

(employer) appeal a decision of the Workers' Compensation Commission awarding benefits to

Michael E. Ellyson (claimant).  Employer alleges the commission erred in finding that claimant's

depression was a consequence of his earlier compensable injury and that claimant's treatment for

pain was "reasonable, necessary, and causally related" to his compensable injury.  We disagree

with employer and affirm the commission's award.

      Claimant sustained a compensable injury to his right foot on April 24, 2000.  A dispute

arose concerning whether claimant's depression was a compensable consequence of this injury

and whether the award required that employer pay for a spinal cord stimulator (SCS).[1]  The

      _____

      [1] At various points, claimant has argued the original award covered these issues,
contending employer disobeyed an existing order of the commission by refusing to pay for these
treatments, and has argued that he applied for a change of condition hearing with the commission
in order to include these treatments in the award.  The commission labels claimant's actions as a
"Claim[] for Benefits."

commission held a hearing and accepted evidence on the issues. The deputy and the full commission found claimant was entitled to an award for his depression and for the SCS.[2]

## I. Claimant's Depression

Employer argues the evidence did not support the commission's determination that claimant's depression was causally related to his compensable injury. Determination of causation is a factual finding. Thompson v. Brenco, Inc., 38 Va. App. 617, 622, 567 S.E.2d 580, 583 (2002). When reviewing workers' compensation cases, we defer to these factual findings. Code § 65.2-706(A); Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). The commission determines which medical evidence is credible, as the Court explained in Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268-69 (2000):

> Applying equally well-settled principles, the Supreme Court has held that the "question [of causation] raised by 'conflicting expert medical opinions' is one of fact." Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981). Thus, the commission's "finding upon conflicting medical evidence that a certain condition does or does not exist is . . . a conclusive finding of fact." McPeek v. P.W. & W. Coal Co., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969). "The deference that we give to the commission's fact finding on medical questions is based upon the 'unwisdom of an attempt by . . . [courts] uninitiated into the mysteries [of the medical science debate] to choose between conflicting expert medical opinions.'" Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992) (citation omitted).

---

[2] While the deputy commissioner denied claimant's various requests for compensation related to other consequential injuries, he did not appeal those decisions to the full commission and does not raise them on appeal.

Employer acknowledges the record contains medical evidence to support the commission's finding. Nevertheless, employer contends that evidence was incredible, as a matter of law, because these doctors did not have claimant's full medical history regarding his psychiatric and substance abuse problems. Employer argues its expert did have this knowledge and, therefore, was credible. This argument neglects the standard of review used on appeal. Employer claims Clinchfield Coal Co. v. Bowman, 229 Va. 249, 329 S.E.2d 15 (1985), and Sneed v. Morengo, Inc., 19 Va. App. 199, 450 S.E.2d 167 (1994), necessitate a different approach to the evidence in this case. We find these cases are distinguishable from the instant case and do not change the traditional standard of review.

In Clinchfield Coal, the only medical expert, Dr. McIlwain, initially opined that the employee's knee injury was related to a 1978 workplace accident. 229 Va. at 250-51, 329 S.E.2d at 16. However, this opinion was made before Dr. McIlwain reviewed the employee's prior medical records, which included a 1975 knee injury. Id. at 251, 329 S.E.2d at 16. After reviewing those records, the doctor concluded the new complaints arose from the previous, non-workplace injury. Dr. McIlwain noted in his second report that:

> "this patient's symptomatic complaints about his right knee which ultimately led to the surgery I performed on him were the same complaints from 1975 to the present. Obviously at any point along the way a new injury could have occurred but it would appear in the context of his previous complaints that he has been experiencing a continuation of the 1975 injury."

Id. The Court noted that Dr. McIlwain's earlier statement was "mere opinion that the condition may have resulted from the accident [and] is not sufficient" to support the commission's finding of causation. Id. Further, the Court explained, "This is not a case where the Commission simply resolves a doctor's conflicting evidence. Here, . . . the treating physician rendered but one opinion based upon the facts. His original assumption rested upon a faulty premise, and the Commission erred in attributing any weight to it." Id. at 252, 329 S.E.2d at 16 (citation omitted).

- 3 -

In the case before this Court, the treating physicians did not revise their opinions, but consistently related claimant's depression to his compensable injury. Employer claims these doctors did not have his full medical history; therefore, their opinions are not credible. However, Clinchfield Coal does not stand for the proposition that doctors must have the entire medical history of an individual before they can state a valid opinion about the cause of a condition. Instead, Clinchfield Coal requires that the commission ignore an earlier, "mere opinion" by an expert who revises and rejects that earlier opinion in favor of a new opinion which is based on a more complete review of the facts in the case. In this case, the doctors did not state "assumptions" initially, but instead made clear statements that claimant's depression was caused by this compensable injury. The doctors were not asked to and did not review the additional records that employer suggests were necessary to reach this conclusion. The doctors never rejected their statements on causation. Clinchfield Coal does not apply to the facts in this case.

Additionally, the record does not support employer's allegations that the doctors did not examine crucial medical records. While an initial intake sheet did indicate claimant had "no" prior psychiatric history, the letters and later medical records indicate Drs. Brooks and Shield were aware of at least some of the treatment claimant underwent for psychiatric and drug problems. Dr. Kernodle, a colleague of Drs. Brooks and Shield, indicated in a report that claimant had been hospitalized at Central State and had a history of substance abuse. A letter from Dr. Shield indicates that he knew claimant was treated at a psychiatric hospital and that his family had a history of psychiatric disorders. These doctors do not indicate that they needed additional information on claimant's psychiatric history to reach a conclusion regarding the causation of his depression. Contrast Howell Metal Co. v. Adams, 35 Va. App. 184, 543 S.E.2d 629 (2001) (finding the commission erred in accepting the evidence as sufficient to meet a claimant's burden where all of the physicians who suggested Adams's disorder was related to his

compensable injury also indicated that they needed more information on his prior mental state to reach a credible conclusion about causation). Even Dr. Levenson,[3] who employer argues had access to all of claimant's medical records, stated, "the injury may have been a contributing factor in [claimant's] recent bout of depression."[4]

The record in this case does not suggest that claimant had ongoing problems with depression at the time of the compensable accident. In fact, the record suggests these problems were resolved, as claimant's last psychiatric treatment was in 1997, three years prior to his foot injury. Nothing suggests, as it did in Clinchfield Coal, that claimant's depression problem was a continuing complaint unaffected by the workplace accident.

Likewise, Sneed does not support employer's position. In that case, this Court interpreted Clinchfield Coal as standing for the principle that "[w]henever a physician's diagnosis flows from an assumption that *rests upon a faulty premise, such as misinformation provided by a claimant*, the commission *may refuse*, and often will be required to refuse, to attribute any weight to that opinion." Sneed, 19 Va. App. at 205, 450 S.E.2d at 171 (emphasis added). This Court noted, "[s]ignificantly, Sneed conceded . . . he did not recall telling any of his treating physicians of his long history of physical and psychological problems . . . ." Id.

---

[3] Dr. Levenson did not treat claimant. He simply reviewed the records at the request of employer. All of the other physicians did treat claimant at some point.

[4] The complete sentence in Dr. Levenson's report reads, "While the injury may have been a contributing factor in his recent bout of depression, I do not believe it was a cause." This statement seems contradictory on its face, as a contributing factor is a cause. See Henrico County Sch. Bd. v. Etter, 36 Va. App. 437, 446-47, 552 S.E.2d 372, 376 (2001) ("The extent or degree to which the work-related cause contributed is not important. It matters only that the work-related cause contributed in some part to claimant's disability. See Ford Motor Co. v. Hunt, 26 Va. App. 231, 237-38, 494 S.E.2d 152, 155 (1997) (applying 'two causes' rule even though claimant's treating physician opined that disability was 'mainly' caused by non-work-related condition). Thus, under the 'two causes' rule, full benefits are allowed for claimant's disability.").

Additionally, many of these problems were intervening factors, occurring between the time of the accident and the development of the disability.  Id. at 201-03, 450 S.E.2d at 168-70.  Finally, Sneed *affirmed* the commission's decision to disregard the opinion of Sneed's doctor.  Id. at 205, 450 S.E.2d 171.  Under our standard of review, the Court deferred to the commission's determination as to the credibility of the evidence and found no error as a matter of law.

Here, in contrast, the commission found the treating physicians credible, explaining:

> The medical record reflects that the claimant has undergone
> extensive psychiatric treatment in the past.  We recognize that he
> has been treated in the past for depression.  The claimant's treating
> physicians, Dr. Shield and Dr. Brooks, have related his depression
> to the compensable injury.  Considering their actual treatment of
> the claimant, we agree that their opinions are persuasive.
> Dr. Levenson only evaluated him on one occasion.

The evidence supports this finding.  Even if Drs. Shield and Brooks did not have access to all of claimant's medical records from 1997 and before, their opinions are not incredible.  The record does not indicate claimant lied to his doctors or that the doctors had rejected their earlier opinions and determined claimant's accident had no relationship to his current depression.[5]  Nothing in the medical testimony suggested they believed more information on claimant's background was necessary before stating an opinion on causation.  The commission found this evidence as credible and gave it significant weight in its decision.  On appeal, we defer to the commission's determinations regarding the weight of the evidence.  Island Creek Coal Co. v. Honaker, 9 Va. App. 336, 339-40, 388 S.E.2d 271, 272-73 (1990).  We find the commission properly exercised its authority to determine which opinions were credible and which opinions should be weighed more heavily in its decision.

---

[5] Employer never presented these records to claimant's doctors and never asked for revised opinions based on these records.

## II. Compensability of SCS

Claimant has complained of significant pain from his injury. He has both recurring pain directly from the injury and from arthritis that has developed in this foot as a result of the injury and its treatment. Several doctors diagnosed claimant as having complex regional pain syndrome (CRPS). Claimant received some physical therapy and underwent two lumbar sympathetic block treatments from Dr. Long, receiving some relief from both types of treatment. Dr. Jones, claimant's orthopedist, referred him to Dr. Decker after these treatments were attempted. Dr. Jones sent a letter to Dr. Decker explaining claimant's condition.

Dr. Decker recommended a SCS implant as a means to resolve claimant's CRPS. Dr. Rubin, who reviewed claimant's records, indicated, "A spinal cord [s]timulator is certainly appropriate for RSD/CRPS of the lower extremity." He did express concerns that the implant might not eliminate all the sources of claimant's pain.

Employer argues the SCS is "unreasonable and medically unnecessary." Employer quotes the sentence of Dr. Rubin's statement, which notes that the SCS will not affect claimant's arthritic condition. Employer also contends claimant must exhaust all more conventional therapies for pain relief before he can be compensated for SCS.

Employer does not cite any legal authority for the proposition that all conventional therapies must be tried before an employee can receive compensation for a more radical or innovative treatment. Additionally, claimant tried the more conventional therapy, although he did not complete it. His treating physician, who received information from Dr. Long after he attempted the lumbar sympathetic block treatments, concluded claimant would benefit most from the SCS implant.

Two doctors concluded claimant should receive the SCS. Employer offered no medical testimony to rebut this conclusion. Although Dr. Rubin said he believed the SCS would not

resolve claimant's arthritis, he also said it was "certainly appropriate for RSD/CRPS of the lower extremity." Dr. Decker concluded the SCS was "reasonable and necessary." Although claimant did not complete the lumbar sympathetic blocks, his attempt to undergo this treatment went badly. The commission could reasonably conclude claimant was not an appropriate candidate for that treatment based on the incidents surrounding this attempt and on Dr. Decker's recommendation.

We cannot find as a matter of law that the commission erred in its factual findings, and we affirm the award to claimant.

Affirmed.