COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and McClanahan
Argued at Salem, Virginia


APOLLO MINING CORPORATION AND
  NATIONAL UNION FIRE INSURANCE COMPANY
  OF PITTSBURGH/AMERICAN INTERNATIONAL
  ADJUSTMENT COMPANY, INC.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0937-04-3              JUDGE ROBERT J. HUMPHREYS
                                                      DECEMBER 14, 2004
DORSEY ROBERT LOONEY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Monica Taylor Monday (Dale W. Webb; Gentry Locke Rakes &
              Moore, on brief), for appellants.

              P. Heith Reynolds (Wolfe, Williams & Rutherford, on brief), for
              appellee.


       Appellants Apollo Mining Corporation and National Union Fire Insurance Company of

Pittsburgh ("employer") appeal the decision of the Workers' Compensation Commission

awarding temporary disability benefits to appellee, Dorsey Robert Looney.  Employer argues

that the commission erred in finding that Looney's knee injury was causally related to an

industrial accident, contending that the medical evidence before the commission was based upon

false and incomplete information and, therefore, should have been disregarded.  For the reasons

that follow, we affirm the commission's award of benefits.

       On March 28, 2003, Looney was working in an underground coal mine when a large rock

struck him on the back of his right shoulder.  The rock "pushed" Looney off-balance, and he

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

"stumbled backwards." As a result, Looney's right foot "went behind [him]," causing him to "hurt[] [his] knee and [his] shoulders." Looney reported the incident to a supervisor, who took Looney to the emergency room. Dr. Daiuto, the attending physician, diagnosed Looney with a shoulder and neck injury. However, presumably because Looney "did not complain of any knee problems," Dr. Daiuto did not x-ray or otherwise examine Looney's right knee.

The following morning, Looney's right knee "swelled up real big and . . . had a [greenish-blue] bruise on it." On April 4, 2003, Looney returned to the emergency room "because [his] knee was just getting worse." Dr. Gaudet, the attending physician, diagnosed Looney with a right knee strain.

Three days later, Dr. Whitman, an orthopedist, also examined Looney's right knee. Looney's right knee was swollen at the time of the examination, and Dr. Whitman noted that there was "[s]light effusion" of the knee and that Looney was "unable to tolerate a pivot test." After examining a prior x-ray, Dr. Whitman diagnosed a right knee contusion.

On May 19, 2003, Looney filed a claim for benefits with the commission. At a hearing before the deputy commissioner, employer stipulated that Looney sustained a shoulder injury in the accident. Employer contended, however, that Looney's knee injury was attributable to his pre-existing rheumatoid arthritis rather than the accident that occurred on March 28, 2003. Employer noted that, one week before the accident, Looney sought treatment in the emergency room for "arthritis," complaining of pain in his right knee, as well as his hands, right elbow, ankles, and hips. At the hearing, Looney admitted that he did not specifically tell any of the physicians who treated him after the accident that he had recently experienced arthritic pain in his right knee. Looney's medical records, however, do indicate that he informed at least Dr. Gaudet and Dr. Whitman that he was being treated for arthritis.

The deputy commissioner awarded temporary total disability benefits for Looney's shoulder and neck injuries. However, he also found that Looney's right knee condition was not causally related to the accident, reasoning that:

> In view of claimant's extensive history of rheumatoid arthritis, his history of right knee pain . . . and the time lapse between the accident and the commencement of symptoms in the right knee, we cannot say that there is such an obvious connection between the accident and claimant's right knee pain that medical evidence can be dispensed with.

The deputy commissioner further observed that,

> [b]y giving Dr. Whitman an inaccurate history of his previous right shoulder and right knee problems, claimant has rendered Dr. Whitman's opinion devoid of any probative value. Consequently, no probative medical opinion supports the claim insofar as the right knee is concerned.

On appeal, the commission reversed in part, concluding that Looney had suffered an injury by accident to his right knee. The commission reasoned:

> We disagree with the Deputy Commissioner's conclusion that Dr. Whitman's opinion is entitled to little weight because it is based on an inaccurate medical history. Although Dr. Whitman's office note . . . reflects that the claimant denied any "problem" with his right knee before March 28, 2003, Dr. Whitman's record also reflects that he was made aware of the claimant's pre-existing rheumatoid arthritis.

The sole issue presented in this appeal is whether the commission erred in finding that Looney's right knee pain was causally related to the accident of March 28, 2003. Because there is credible evidence in the record that supports the commission's findings, we affirm.

When reviewing a sufficiency of the evidence question, our Court determines "whether there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved." Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988) (emphasis is original). "Whether a disease is causally related to the employment and not causally related to other factors is such a finding of fact." Island Creek Coal Co. v. Breeding,

- 3 -

6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988). Accordingly, if the record contains any credible evidence supporting the commission's finding that Looney's knee injury was causally related to the industrial accident, we are bound by that determination regardless of whether there is evidence in the record that may support a contrary finding. Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Initially, Looney himself testified that his knee injury "had to be [caused by] the accident" because "that's the only other thing there was." In addition, the record presented to the commission contains three separate medical opinions as to whether or not Looney's knee injury was causally related to the accident that occurred on March 28, 2003. First, Dr. Daiuto indicated that "the present complaints of knee problems are not related to the industrial accident of March 28, 2003." Second, Dr. Gaudet checked a box marked "unknown" in response to a question asking whether he thought that Looney's knee injury was causally related to the March 28 incident. And third, Dr. Whitman indicated that "the problems" Looney was experiencing did result from "his on the job injury." So, in sum, one physician thought that the knee injury was related to the accident, one physician thought that the knee injury was not related to the accident, and one physician was unsure as to whether the knee injury was related to the accident.

Although the commission was presented with the conflicting medical opinions of three physicians, "the commission [is] free to decide which evidence was more credible and should be weighed more heavily." Thompson v. Brenco, Inc., 38 Va. App. 617, 634, 567 S.E.2d 580, 584 (2002). Here, the commission resolved the conflicting medical evidence by concluding that Looney had presented sufficient evidence of causation. Specifically, the commission reasoned that, "[d]espite knowing about the claimant's pre-existing joint disease," Dr. Whitman had concluded "that [Looney's] right knee contusion was related to his industrial accident rather than to his rheumatoid arthritis." The commission also pointed out that Dr. Gaudet – who was also

- 4 -

aware of Looney's pre-existing arthritis – "diagnosed the claimant as suffering from a right knee 'strain' rather than pain associated with his pre-existing arthritis." The commission additionally stressed that it found "Dr. Whitman's opinion regarding the cause of the contusion to the claimant's right knee to be persuasive." We will not disturb this finding on appeal.

Moreover, the commission noted that Looney had "denied any incident, other than his accident on March 28, 2003, which could have caused the bruise on his knee." Because "[a]n employee's testimony may be considered in determining causation, particularly where the medical evidence is inconclusive," Howell Metal Co. v. Adams, 35 Va. App. 184, 188, 543 S.E.2d 629, 631 (2001), the commission properly considered Looney's testimony in determining whether his knee injury was caused by the accident.

Employer argues, however, that "the Commission erred in giving Dr. Whitman's opinion and Dr. Gaudet's diagnosis any weight because these opinions were based upon an erroneous and incomplete history and understanding of Claimant's medical history . . . ." Employer correctly points out that, in Sneed v. Morengo, Inc., 19 Va. App. 199, 450 S.E.2d 167 (1994), we held that "[w]henever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission *may* refuse, and often will be required to refuse, to attribute any weight to that opinion." Id. at 205, 450 S.E.2d at 171 (emphasis added) (citing Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985)); see also Howell Metal, 35 Va. App. at 187, 543 S.E.2d at 631. Employer concludes that, "[i]n this case, the commission was *required* to refuse to attribute any weight to Dr. Whitman's causation opinion and Dr. Gaudet's diagnosis."

Here, there is no evidence that Looney intentionally misrepresented his medical history to his treating physicians. Regardless, we note that the "required to refuse" language from Sneed is *dicta*. In Sneed, we *affirmed* the commission's decision to disregard a treating physician's

- 5 -

testimony, holding that the commission *may* refuse to attribute any weight to the opinion of a physician if that opinion is premised on faulty information. We did not hold then, nor have we held since, that the commission is ever "required" to disregard the opinion of a treating physician. It is the role of the commission to weigh the evidence and make determinations as to the credibility of the witnesses. The commission was, therefore, free to give no weight, some weight, or significant weight to the opinions of Drs. Whitman and Gaudet. On appeal, we will not disturb that decision, for it is not the role of this Court to second-guess the commission's weighing of the evidence. If we were to hold, as employer suggests, that the commission was "required" to disregard the physicians' testimony, we would, in effect, be ignoring our appellate standard of review and usurping the role of the commission as the fact finder. See Code § 65.2-706(A) ("The award of the Commission . . . shall be conclusive and binding as to all questions of fact.").

Here, the record before the commission indicated that, despite Looney providing what employer describes as "incomplete" and "false information," Dr. Whitman and Dr. Gaudet were both aware that Looney was being treated for arthritis pain. Accordingly, these physicians did not rest their diagnoses upon the "faulty premise" that Looney had never experienced right knee pain. Sneed, 19 Va. App. at 205, 450 S.E.2d at 171. Rather, *despite* their knowledge that the pain in Looney's right knee could possibly be arthritic in nature, Dr. Gaudet diagnosed Looney with a right knee "strain," and Dr. Whitman concluded that Looney's knee injury was attributable to his accident rather than his rheumatoid arthritis.

In Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 598 S.E.2d 750 (2004), we rejected a similar claim. There, the employer argued that the testimony of the claimant's treating physicians "was incredible, as a matter of law, because these doctors did not have claimant's full medical history . . . ." Id. at 409, 598 S.E.2d at 751. We disagreed, explaining that Sneed,

- 6 -

<u>Howell Metal</u>, and <u>Clinchfield Coal</u> "do[] not stand for the proposition that doctors must have the entire medical history of an individual before they can state a valid opinion about the cause of a condition." <u>Id.</u> at 410, 598 S.E.2d at 752. Rather, our precedent requires only "that the commission ignore an earlier, 'mere opinion' by an expert *who revises and rejects that earlier opinion in favor of a new opinion which is based on a more complete review of the facts in the case*." <u>Id.</u> (emphasis added).[1]

As in <u>Amelia Sand</u>, the treating physician here did not revise his opinion, but consistently related claimant's condition to his compensable injury. <u>See id.</u> Accordingly, because Dr. Gaudet and Dr. Whitman were both aware of Looney's pre-existing arthritis when they rendered their medical opinions and diagnoses, the commission did not err when it attributed some evidentiary weight to the opinions of these physicians. For these reasons, we hold that the commission did not err when it found that Looney's knee injury was causally related to the accident that occurred on March 28, 2003, and, therefore, we affirm the award of temporary disability benefits.

<u>Affirmed.</u>

---

[1] We further note that the application of our holdings in <u>Sneed</u> and <u>Amelia Sand</u> do not turn on whether the claimant made a misrepresentation or omission – whether negligent or intentional – to his treating physician. Rather, the controlling inquiry is whether the physician was aware of the allegedly omitted or misrepresented information. <u>See</u> <u>Amelia Sand</u>, 43 Va. App. at 410, 598 S.E.2d at 752; <u>Sneed</u>, 19 Va. App. at 205, 450 S.E.2d at 171. Our focus, then, is not upon the conduct of the claimant, but rather, the information available to the treating physician at the time he rendered the medical opinion before the commission.