COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Felton, Judges McCullough and Decker
Argued at Chesapeake, Virginia


SMURFIT-STONE CONTAINER
 ENTERPRISES, INC. AND
 ROCKTENN CP, LLC

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0349-14-1                   JUDGE STEPHEN R. McCULLOUGH
                                                          OCTOBER 7, 2014

DARRELL JONES


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (Cecil H. Creasey, Jr.; Two Rivers Law Group,
            P.C., on brief), for appellants.

            Charlene A. Morring (Montagna, Klein, Camden LLP, on brief), for
            appellee.


        Smurfit-Stone Container Enterprises, the employer, challenges the commission's award

of benefits. The employer's six assignments of error fall into two general issues. First, with

regard to causation, the employer argues that: (1) the employee, Darrell Jones, failed to establish

a causal relation between his medical treatment, disability, and his work injuries; (2) Jones's

medical treatment at the hands of Dr. Arthur Wardell was not causally related to his work

injuries; and (3) Jones did not suffer from a condition causally related to his industrial accident.

Second, the employer contends that Jones's efforts to market his residual work capacity were

deficient in several particulars. We find no error and affirm the decision of the commission.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On June 15, 2009, while working for Smurfit-Stone, Jones suffered an electrical shock. The current passed from one hand, through his arm, and into his other hand. Dr. Levine evaluated Jones on May 5, 2010 and found that there was "no objective basis for a permanent impairment rating." Jones returned to work.

The employer became concerned that Jones was not using his left arm to its full capacity. Accordingly, Jones met with Dr. Chandler at the plant on November 3, 2010. Dr. Chandler did not conduct an examination. Rather, he read Jones's relevant medical records and met with Jones "to discuss the work aspects of [his] left arm symptoms." Dr. Chandler placed Jones on temporary work restrictions: no lifting of more than five pounds with the left arm and no forceful gripping with the left hand. The employer did not have any light-duty work available, so Jones was "passed out" of work.

Jones sought a second opinion from Dr. Wardell. Dr. Wardell examined Jones and reached a provisional diagnosis on December 8, 2010, that Jones suffered from "[c]ervical and dorsal muscle injuries and strains as a result of electrical shock. Sensory nerve damage from electrical shock. Left shoulder bursitis." He ordered an electromyograph, or EMG. Following this EMG, Dr. Wardell concluded that there was "[n]o electrodiagnostic evidence of cervical radiculopathy on the left. Left ulnar neuropathy across the elbow, mild." On December 14, 2010, Dr. Zhu, a board-certified neurologist, found "[n]o electrodiagnostic evidence of cervical radiculopathy on the left" and "left ulnar neuropathy across the elbow, mild."

On January 14, 2011, following physical therapy and medication, Jones reported that his neck and arm pain improved. Dr. Wardell continued to treat Jones through August 2011.

On February 16, 2011, Dr. Wardell completed a Capabilities and Limitations Worksheet. He checked a number of boxes on the worksheet. Dr. Wardell noted that Jones should not lift

more than five pounds and that he should not perform certain functions such as pulling, pushing, or reaching above his shoulder. With regard to the duration of the restrictions, Dr. Wardell indicated that he was "[u]nable to determine at this time" and that the "[p]atient will be rechecked on 2/16/11." Dr. Wardell wrote "None" in a section of the form captioned, "Current Functional Limitations." Those limitations listed on the form included speech, vision, hearing, movement, self-care, cognition, concentration, memory, and judgment.

Jones also was evaluated by Dr. Harding. On January 20, 2011, Dr. Harding found "[s]ignificant functional weakness with inconsistent effort noted. Strongly suspect functional overlay and malingering. [Functional capacity evaluation] corroborates these findings. Do not see a primary neurologic reason he cannot resume normal work activity."

The same month that Jones was "passed out" of work at Smurfit-Stone, he obtained part time work with Advantage Sales and Marketing, presenting and promoting different products in stores. The hours varied. Some weeks, he would not work at all, and others, he might work up to thirty hours. Jones has a B.A. in music and math from Stillman College. Prior to 2002, he worked as an assistant band director, choir director, music teacher, and private instructor. He also had some experience cutting hair.

Jones registered with the Virginia Employment Commission. He also applied for other jobs. Jones maintained a log of his job contacts. He assembled the log on a monthly basis from notes he had taken. He secured two interviews, but neither resulted in a job offer. He sought many "co-manager" positions, and he explained that many available positions, such as cashier and grocery stocker, required lifting beyond his restrictions. Most of the applications he filed did not involve an advertised job opening. Based on his experience with cutting hair, he inquired about a job at Great Clips. Jones's sister-in-law informed him about schools looking to hire teachers with degrees in math and music. He acknowledged, however, that he did not pursue

- 3 -

these job leads.  From November 10, 2010 to June 20, 2011, Jones made a total of sixty-five job contacts.

Throughout this time, Jones remained in contact with his former employer.  In July 2011, his doctor removed his restrictions, and Jones returned to work with Smurfit-Stone.

The deputy commissioner awarded Jones temporary partial disability benefits.  The full commission affirmed.  On appeal to this Court, we reversed and remanded because the commission had not addressed the employer's argument that appellant's disability was not causally related to his employment.  Smurfit-Stone Container Enters., Inc. v. Jones, No. 0358-13-1, 2013 Va. App. LEXIS 306 (Va. Ct. App. Oct. 29, 2013).  On remand, the commission credited Dr. Wardell's opinion and found that Jones's disability was indeed related to his employment.  The commission adopted its prior findings that Jones's marketing efforts were adequate.  The employer appeals from this decision.

ANALYSIS

I.  THE EVIDENCE SUPPORTS THE DECISION OF THE COMMISSION WITH REGARD TO THE MEDICAL EVIDENCE.

"The commission's determination of causation is a factual finding that will not be disturbed on appeal if supported by credible evidence."  Commonwealth/Cent. Va. Training Ctr. v. Cordle, 37 Va. App. 232, 238, 556 S.E.2d 64, 67 (2001).  In determining whether credible evidence exists, this Court does not retry the facts or reweigh the evidence.  Jules Hairstylists, Inc. v. Galanes, 1 Va. App. 64, 69, 334 S.E.2d 592, 595 (1985).  On appeal from the commission, "we review the evidence in the light most favorable to the prevailing party."  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

The employer contends that Dr. Wardell's assessment should be disregarded, or, failing that, the commission should reevaluate its acceptance of his conclusions.  First, the employer

- 4 -

argues that Dr. Wardell's records from January 14, 2011 are "facially inconsistent." Second, the employer notes that, although Dr. Wardell indicated that Jones was unable to work at all, Jones actually continued to work part time with Advantage Sales and Marketing. The employer also stresses the contrary conclusions of Drs. Harding and Levine.

We perceive little or no inconsistency in Dr. Wardell's notes. In his office notes, he indicated that appellant should remain out of work. In the Capabilities and Limitations Worksheet, Dr. Wardell plainly indicated limitations with regard to Jones's current capabilities and the amount of lifting he was capable of performing. As to the *duration* of the restrictions, Dr. Wardell indicated that he was "unable to determine at this time" – plainly presupposing that there *were* such restrictions. It is true that he indicated "None" with respect to current functional limitations. The only relevant limitation listed, however, is "movement," and Dr. Wardell could have concluded that, in this context, the word "movement" meant ambulatory movement rather than movement with the hand or arms in connection with fine motor skills. The form is not clear with regard to the term. At any rate, Dr. Wardell treated appellant over many months and repeatedly concluded that Jones was impaired.

Even if there were a minor inconsistency in Dr. Wardell's notes, the commission could, on this record, credit Dr. Wardell's diagnosis over those offered by other physicians. It is well settled that "'a finding of fact made by the commission is conclusive and binding upon this [C]ourt.'" Sneed v. Morengo, Inc., 19 Va. App. 199, 204-05, 450 S.E.2d 167, 170 (1994) (quoting Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986)). "'A question [of causation] raised by conflicting medical opinion is a question of fact.'" Id. at 205, 450 S.E.2d at 171 (quoting Powell, 2 Va. App. at 714, 347 S.E.2d at 533). "That contrary evidence may be in the record is of no consequence if there is credible evidence to support the

commission's findings." Id. at 205, 450 S.E.2d at 170-71 (internal quotation marks and citation omitted).

The fact that Jones continued to work in a part-time capacity – to the benefit of the employer – does not undermine the credibility of Dr. Wardell's diagnosis. The employer reads the record to suggest that Dr. Wardell must have been mistaken in concluding that appellant could not work because he did, in fact, work. Under the standard of review, we read the record to indicate that Jones continued to work *despite* the symptoms he experienced.

The employer cites Clinchfield Coal Co. v. Bowman, 229 Va. 249, 329 S.E.2d 15 (1985) (per curiam), Howell Metal Co./Commercial Metals Co. v. Adams, 35 Va. App. 184, 543 S.E.2d 629 (2001), and Dodson v. Allison Building & Renovation, Inc., No. JCN 235-60-52, 2011 VA Wrk. Comp. LEXIS 428 (Va. Workers' Comp. Comm'n June 24, 2011). These decisions are inapposite. Clinchfield Coal and Howell Metal Co. involved faulty expert opinions – faulty because the diagnosis was made without relevant and potentially controlling facts. In Clinchfield Coal, the physician's first report diagnosed the claimant based only on the medical history related to him by the claimant. 229 Va. at 250-51, 329 S.E.2d at 16. The physician later reviewed the claimant's medical records, which revealed a relevant prior injury, and he completed a second report changing his causation opinion. Id. at 251, 329 S.E.2d at 16. The commission credited the first report, but the Supreme Court reversed, finding that the first diagnosis of causation rested on a faulty assumption based on incomplete information. See id. at 251-52, 329 S.E.2d at 16-17. In Howell Metal, this Court reversed an award by the commission, reasoning that the medical opinions on which the commission relied did not establish causation because the opinions were reached without the benefit of a potentially-dispositive past medical history. 35 Va. App. at 186-87, 188-89, 543 S.E.2d at 630-31. Finally, in Dodson the commission gave "no weight" to a diagnosis that relied on an incomplete or inaccurate medical

- 6 -

history.  2011 VA Wrk. Comp. LEXIS 428, at *32.  In contrast, Dr. Wardell's notes indicate not only his review of Jones's medical history but also an extensive battery of tests that undergird his conclusions.

Dr. Wardell was Jones's treating physician.  The commission committed no error of law in accepting his diagnosis, and we defer on appeal to its determination.

II. THE COMMISSION'S DECISION REGARDING JONES'S MARKETING EFFORTS IS SUPPORTED BY CREDIBLE EVIDENCE.

The employer also challenges Jones's marketing as inadequate and his entitlement to temporary partial disability benefits from November 26, 2010 through December 8, 2010.

In order to establish entitlement to temporary disability benefits, a partially disabled claimant "must prove that he made a reasonable effort to market his residual work capacity." Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220, 527 S.E.2d 451, 453 (2000).  "The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the fact finding judgment of the commission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal." Id. at 220-21, 527 S.E.2d at 453.

"The employee must obviously exercise reasonable diligence in seeking employment, and what is reasonable in a given case will depend upon all of the facts and surrounding circumstances." Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987).  "There are no fixed guidelines for determining what constitutes a 'reasonable effort' by an employee to market residual work capacity." Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 579 (2008) (quoting Bateman, 4 Va. App. at 467, 359 S.E.2d at 102).  The commission considers the following factors:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature

and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted).

After he was released from Smurfit-Stone, Jones quickly found part-time work. He stayed in contact with his former employer, ultimately returning to a job there. He registered with the Virginia Employment Commission. He made numerous job contacts. Although the employer takes issue with the fact that many of these contacts were for managerial rather than entry-level positions, we do not agree. Considering Jones's age, his college degree, and the physical restrictions imposed, the fact that his job search privileged the pursuit of managerial positions is neither surprising nor problematic.

The employer also contends that Jones should have pursued a job as a teacher or cutting hair. Although he held a degree in music and math, there is no evidence that he possessed the requisite certifications to teach. His experience over the previous decade was not in music or math, making him less appealing to employers in that field. The record is not as clear regarding Jones's qualifications as a barber. Given the record before us and the standard of review, Jones's failure to pursue a job as a teacher or cutting hair is not a basis for reversal.

As to the number of his contacts, although it is certainly arguable that Jones could have done more in this regard, we do not find the number so wanting that we must reverse the commission as a matter of law.

Finally, the employer contends that, for the period of June to July 2011, when Jones's employment resumed with Smurfit-Stone, Jones did not make any contacts at all. The commission reasoned, "While the claimant stopped his job search efforts in June 2011, he was

- 8 -

anticipating a return to work with his pre-injury employer. The period was brief and he was working for another employer. These actions on his part were reasonable." Commissioner Williams dissented on this point based on the fact that Jones "simply quit marketing for an entire month before his full duty release to work." On these specific facts, we agree with the commission. Jones was working, although only part time, and had registered with the Virginia Employment Commission. On June 7, 2011, Dr. Wardell released Jones to work with restrictions. His employer, however, told him there was no work available under restrictions – suggesting that work was available without such restrictions. Jones followed up with Dr. Wardell, who knew that he was "financially strapped." Dr. Wardell decided to release him to full duty under doctor's care on July 20, 2011. His employer then allowed him to return to work. Jones certainly could have done more during this period. He did, however, continue to work part time, he remained in contact with his former employer, and he was working with his doctor to secure a return to work. These circumstances suffice for us to uphold the commission's decision under the standard of review.

## CONCLUSION

We affirm the decision of the commission.

Affirmed.