COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, McClanahan and Alston
Argued at Alexandria, Virginia


HYATT REGENCY CRYSTAL CITY AND
   HYATT CORPORATION
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1007-10-4                      JUDGE ROSSIE D. ALSTON, JR.
                                                         JANUARY 25, 2011
CHARLES SPENCER


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Lynn McHale Fitzpatrick (Franklin & Prokopik, P.C., on brief),
                for appellants.

                No brief or argument for appellee.


        Hyatt Regency Crystal City and Hyatt Corporation (employer) appeal a decision of the

Workers' Compensation Commission (the commission) awarding benefits to Charles Spencer

(claimant).  Employer alleges the commission erred in finding that claimant's right shoulder

injury was a consequence of a compensable work accident and not a pre-existing injury.

        On appeal, employer asserts two assignments of error.  First, employer alleges that the

commission erred, as a matter of law, "in finding that [claimant's] claimed medical treatment

was causally related to a compensable work injury suffered by [c]laimant while he was employed

[by employer]."  It argues that the commission's reliance on the medical opinions of two doctors

to conclude that claimant's injury was caused by a compensable work injury was in error

because claimant failed to accurately report his medical history to the doctors.  Second, employer

alleges that the commission erred, as a matter of law, "in finding that [claimant's] claimed

--------
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

medical treatment and disability was not related to [c]laimant's pre-existing condition." We disagree with employer and affirm the commission's award.

## I. BACKGROUND[1]

On appeal from the Workers' Compensation Commission, "we view the evidence in the light most favorable to the party prevailing below[,]" in this case, the claimant. Tomes v. James City Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002).

So viewed, the evidence showed that on October 4, 2007, claimant slipped on a wet floor in the men's restroom at his place of employment and fell backward, hitting his right shoulder against a sink. Claimant was employed as a cook at his place of employment.

In April 2007, before claimant suffered this fall, he had sought treatment from Dr. Dan Weingold, a doctor at Commonwealth Orthopaedics & Rehabilitation, for right shoulder and right knee pain. Dr. Weingold diagnosed claimant with right shoulder pain "secondary to subacromial impingement syndrome" and also possible "acromioclavicular joint arthritis." Dr. Weingold treated claimant with an injection of Depo-Medrol combined with plain Xylocaine and Marcaine. He recommended rest, ice, medication, a gradual return to activity level, and a rehabilitative exercise program. He also reported that surgical intervention involving "arthroscopic evaluation, with possible acromioplasty, distal clavicle excision and rotator cuff debridement or repair" was recommended in some cases of this injury.

On May 5, 2007, claimant returned to Dr. Weingold for treatment of his right shoulder. Claimant reported improvement, but he continued to have "a nagging sensation with overhead use." Dr. Weingold diagnosed claimant with "[r]ight shoulder pain secondary to rotator cuff

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

tendonitis, [acromioclavicular] joint arthritis, clinically improved." Dr. Weingold discussed

claimant's treatment options with him, which included possible surgery. Claimant felt his

symptoms were not significant enough to undergo surgery. He opted to participate in a home

exercise program and follow up with Dr. Weingold in a few months.

As noted, claimant suffered his fall at work, during which he hit his right shoulder on a

sink, on October 4, 2007. Claimant sought medical attention immediately after his work

accident at Concentra Medical Centers, where Dr. Edward A. Seidel evaluated him. Dr. Seidel

reported in his notes that claimant's past medical history was "noncontributory." He diagnosed

claimant with a shoulder contusion, gave him an injection of Toradol, and referred him to

physical therapy for a "right shoulder strain."

Claimant sought medical treatment from Dr. Seidel again on October 18, 2007.

Regarding claimant's past medical history, Dr. Seidel reported in his notes, "[R]eviewed with

patient and is unchanged from date of initial evaluation." Dr. Seidel diagnosed claimant with

possible cervical radiculopathy, cervical strain, and shoulder pain.

On October 24, 2007, claimant visited Dr. Peter Vu. The medical record from this visit

noted that claimant "reports he had previous injury of the same shoulder about 4 months ago at

work but did not report it . . . so he went to see a local orthopedist who treated him conservative

[sic] with 2 injections." Dr. Vu diagnosed claimant with right shoulder pain and a contusion. He

recommended claimant undergo an MRI and discontinue physical therapy.

Claimant subsequently underwent an MRI of his shoulder. The radiologist who

interpreted the results of the MRI noted,

> The abnormality described in the right acromioclavicular joints is
> due to early degenerative arthrosis. Marrow edema is noted in the
> distal clavicle and in the acromion. This may be secondary to the
> arthritic process. Superimposed previous traumatic injury
> involving the right acromioclavicular joint may be in part
> responsible for the marrow edema described above.

Dr. Vu treated claimant again on November 8, 2007. After reviewing the MRI, Dr. Vu diagnosed claimant with a right shoulder contusion and right shoulder pain. He referred claimant to Dr. Edward C. Rabbitt, an orthopedist.

Claimant saw Dr. Rabbitt on January 30, 2008. Dr. Rabbitt noted that claimant was referred for "issues that developed after a fall at work" and indicated that his past medical history was "negative." Dr. Rabbitt diagnosed claimant with "contusion and sprain of the shoulder leading to impingement syndrome." Dr. Rabbitt administered a cortisone shot and recommended physical therapy. He noted that he believed claimant would eventually need surgery, including "an arthroscope of the shoulder, decompression of the subacromial space, removal of the spurs, and possible [acromioclavicular] joint resection."

On March 19, 2008, claimant returned to Dr. Rabbitt for an injection of Marcaine and Decadron and received "a diagnosis of tendonitis, impingement, and rotator cuff tendonitis" in his right shoulder. Dr. Rabbitt discussed surgical intervention with claimant, including "an arthroscopic decompression." Dr. Rabbitt again recommended surgery at the end of April 2008.

On June 23, 2008, claimant returned to Dr. Weingold. For past medical history, Dr. Weingold stated, "Medical History Sheet was reviewed and signed. It is negative for cancer, heart attack, stroke, history of infectious diseases." Dr. Weingold diagnosed claimant with "right shoulder pain secondary to a combination of acromioclavicular joint arthritis and rotator cuff impingement, previously treated and symptomatically improving." Dr. Weingold discussed surgical treatment with claimant, including "arthroscopy, subacromial decompression, and possible distal clavicle excision" as well as addressing "any rotator cuff pathology." When claimant returned to Dr. Weingold for a follow-up appointment on August 11, 2008, Dr. Weingold listed claimant's shoulder injury as "right rotator cuff impingement."

At the request of employer, claimant underwent an independent medical examination on August 20, 2009 by Dr. Robert O. Gordon, an orthopedic surgeon. Claimant denied any history of previous right shoulder symptoms or injuries. Dr. Gordon opined, "I believe that [claimant] does have some right shoulder impingement which he had previously and is not related to what occurred on October 4, 2007. His ongoing subjective complaints are related to his preexisting condition."

At a hearing before the deputy commissioner, claimant testified that he did not recall any previous injuries or problems with his shoulder before October 4, 2007, when he fell at work. He also testified that he did not remember ever receiving treatment for his shoulder before the date of the accident. The deputy commissioner held that the evidence was sufficient to establish a compensable injury by accident and that claimant's symptoms and treatments were causally related to the October 4, 2007 fall. It found that although claimant was treated for right shoulder symptoms previously, he had not been treated for approximately five months prior to the October 4, 2007 fall and was under no restrictions at the time of the fall. It also found that claimant's testimony regarding the fall was uncontradicted and consistent with reports to medical providers. The deputy commissioner awarded claimant medical benefits for as long as necessary pursuant to Code § 65.2-603.

Employer appealed to the full commission. The commission found that claimant was receiving conservative treatment for tendonitis of the right shoulder at the time of the October 4, 2007 fall. However, it also credited the testimony of Drs. Rabbitt and Siedel and found that the fall claimant sustained at his workplace on October 4, 2007 caused claimant to suffer a right shoulder strain that was distinct from his pre-existing tendonitis. The commission relied upon Dr. Rabbitt's diagnoses of a contusion and sprain of the shoulder leading to impingement syndrome and Dr. Seidel's diagnoses of right shoulder strain. It found that the surgery

- 5 -

recommended by Dr. Rabbitt was related to the sprain that led to the impingement syndrome, not claimant's pre-existing tendonitis and affirmed the deputy commissioner's award of medical benefits to claimant.

## II.  INJURY BY ACCIDENT

To recover benefits under the Virginia Workers' Compensation Act, Code §§ 65.2-100 through 65.2-1310, for an injury, a claimant must prove, by a preponderance of the evidence, that he sustained an injury by accident that arose out of and in the course of employment.  Kane Plumbing, Inc. v. Small, 7 Va. App. 132, 135, 371 S.E.2d 828, 830 (1988) (citing Code § 65.1-7; Bradley v. Philip Morris, U.S.A., 1 Va. App. 141, 143, 336 S.E.2d 515, 516 (1985); Richmond Mem'l Hosp. v. Crane, 222 Va. 283, 285, 278 S.E.2d 877, 878 (1981)).  "An 'injury by accident' has three components:  (1) an identifiable incident; (2) a sudden mechanical or structural change in the body; and (3) a causal connection between the incident and the bodily change."  Id. (citing Bradley, 1 Va. App. at 144, 336 S.E.2d at 517).

Employer argues that the commission erred in finding that the claimant suffered an injury by accident because there was no causal connection between claimant's fall at work and his shoulder injury; instead, employer argues, claimant's shoulder injury was a pre-existing injury. Furthermore, employer argues that because claimant failed to report his previous shoulder injury to Drs. Seidel and Rabbitt, the commission erred in relying on the doctors' medical reports to conclude that claimant's shoulder injury was caused by the October 4, 2007 fall.

### A.  Standard of Review

Whether a claimant has suffered an injury by accident is a mixed question of law and fact.  Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 167, 543 S.E.2d 619, 621 (2001) (citing R & R Constr. Corp. v. Hill, 25 Va. App. 376, 378-79, 488 S.E.2d 663, 664 (1997)). While

> [f]indings of fact by the Workers' Compensation Commission will
> be upheld on appeal if supported by credible evidence . . . whether
> those facts prove the claimant suffered an "injury by accident" is a
> question of law. The commission's finding on the legal question is
> not conclusive and binding upon [this Court], but is properly
> subject to judicial review."

Id. at 167-68, 543 S.E.2d at 621 (internal citations omitted).

In determining whether a claimant has established the three components of an injury by accident, the commission's determination of causation is a finding of fact. Tex Tech Indus., Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004). "On appellate review, the factual findings of the commission are binding if they are supported by credible evidence." Wagner Enter., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). In reaching its factual determinations, the commission is "free to decide which evidence was more credible and should be weighed more heavily." Thompson v. Brenco, Inc., 38 Va. App. 617, 624, 567 S.E.2d 580, 584 (2002). This Court "does not retry facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses." Wagner Enter., 12 Va. App. at 894, 407 S.E.2d at 35.

### B. Medical Opinions of Drs. Seidel and Rabbitt

Based upon the medical records of Drs. Seidel and Rabbitt, the commission found that claimant suffered a right shoulder strain caused by his fall on October 4, 2007, and thus proved he suffered an injury by accident arising out of and in the course of his employment. Employer argues that Clinchfield Coal Co. v. Bowman, 229 Va. 249, 329 S.E.2d 15 (1985), is applicable in this case. In Clinchfield Coal Co., 229 Va. at 250, 329 S.E.2d at 15, the issue was whether the claimant's changed knee condition was causally related to his 1978 industrial accident; the

evidence regarding the claimant's condition consisted of two reports from the treating physician. In the first report, the physician stated "it is reasonable from [the claimant's] history to medically *assume* that he sustained this injury [to his knee] in the [1978 accident]." Id. at 250-51, 329 S.E.2d at 16 (emphasis in original). However, when the physician reviewed the claimant's previous medical records, he determined that the cause of the claimant's condition was an earlier 1975 incident. Id. at 251, 329 S.E.2d at 16. This opinion was contained in the second report. Id. The Supreme Court of Virginia held that the commission erred in attributing any weight to the first report because the physician's assumption that the condition was related to the 1978 accident was based on a faulty premise and he had rendered only one opinion based on the facts. Id. at 252, 329 S.E.2d at 16. In Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994), this Court applied Clinchfield Coal Co. to stand for the proposition that "[w]henever a physician's diagnosis flows from an assumption that rests upon a faulty premise," such as incomplete medical history, "such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Employer argues that, in this case, the commission erred in relying upon the medical opinions of Drs. Seidel and Rabbitt because claimant failed to inform them of his previous shoulder injury. We disagree.

Viewed in the light most favorable to claimant, the evidence does not show that claimant failed to inform Drs. Seidel and Rabbitt of his previous shoulder injury. In his medical notes, Dr. Seidel wrote that claimant's past medical history was "noncontributory." Dr. Rabbitt noted that claimant's past medical history was "negative." Employer argues these references show that claimant did not tell Dr. Seidel or Dr. Rabbitt about his past injury. However, use of the terms "noncontributory" and "negative" regarding past medical history do not necessarily establish that claimant did not inform the doctors of his previous shoulder problems. Rather, those terms can

reasonably be interpreted to indicate the lack of foundation for alternative causative circumstances.

"Noncontributory" is defined as "making or involving no contribution; as . . . making no contribution to a medical diagnosis." Webster's Third New International Dictionary 1536 (Philip Babcock Gove, et al. eds., 1993). The word "negative" has multiple meanings. Although it does include the meaning "denoting the absence of something," id. at 1513, it also means "not affirming the presence of the organism or condition in question <a ~ diagnosis>," id. Based on these definitions, the evidence does not necessarily show that claimant failed to inform Dr. Seidel and Dr. Rabbitt of his past shoulder symptoms. Based on the deputy commissioner's finding that the claimant's testimony was "consistent with reports to medical providers" and the commission's reliance on the doctors' opinions, the deputy commissioner and full commission must have interpreted these notations to record the doctors' opinions that claimant's past shoulder problem was insignificant to their medical evaluation of claimant's current shoulder injury, and not that claimant failed to report his medical history accurately.[2]

Viewed in the light most favorable to claimant, the evidence does not show that claimant failed to report his past shoulder problems to Drs. Seidel or Rabbitt. As a result, Clinchfield

---

[2] Furthermore, even if the evidence did show that claimant failed to report his previous shoulder symptoms to Drs. Seidel and Rabbitt, Clinchfield Coal Co., 229 Va. at 251-52, 329 S.E.2d at 16, does not require that the commission disregard the doctors' medical opinions. In Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 410, 598 S.E.2d 750, 752 (2004), this Court stated that "Clinchfield Coal does not stand for the proposition that doctors must have the entire medical history of an individual before they can state a valid opinion about the cause of a condition." Instead, it limited the applicability of Clinchfield Coal Co. to cases in which an expert "revises and rejects [an earlier opinion based on assumptions] in favor of a new opinion which is based on a more complete review of the facts." Id. In this case, Drs. Seidel and Rabbitt did not base their medical opinions on "assumptions," but rather upon claimant's description of his October 4, 2007 fall, which the deputy commissioner found to be accurate. In addition, Drs. Seidel and Rabbitt never revised and rejected their opinion that claimant's shoulder injury was caused by the October 4, 2007 fall. Thus, Clinchfield Coal Co. does not require the commission disregard the medical opinions of the doctors, even if claimant failed to report his past shoulder problems to them.

Coal Co. is inapplicable. The commission did not err in relying upon Drs. Seidel's and Rabbitt's medical opinions to conclude that claimant's injury was caused by his October 4, 2007 fall.

Employer argues that the commission erred when it failed to give greater weight to the opinion of Dr. Gordon that claimant's shoulder injury was not caused by the workplace accident. The specific question of causation "'raised by "conflicting expert medical opinions" is one of fact.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000) (quoting Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981)). Arguably more exacting than the general proposition that appellate courts should defer to the factual findings of the commission, see Wagner Enter., 12 Va. App. at 894, 407 S.E.2d at 35, "[q]uestions raised by conflicting medical opinions must be decided by the commission," Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). As the finder of fact, the commission was free to give more weight to the medical opinions of Drs. Seidel and Rabbitt than those of Dr. Gordon. This Court has recognized the importance of deferring to the commission's determinations of the weight of conflicting medical evidence, "based upon the 'unwisdom of an attempt by . . . [courts] uninitiated into the mysteries [of the medical science debate] to choose between conflicting expert medical opinions.'" Georgia-Pacific Corp., 32 Va. App. at 5, 526 S.E.2d at 268-69 (quoting Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992)) (alterations in original). Thus, the commission did not err in giving lesser weight to Dr. Gordon's opinion.

## C. Pre-Existing Condition

Employer also argues that the commission erred in determining that claimant's injury was caused by his October 4, 2007 fall and not by his pre-existing condition. The commission found that, while claimant was undergoing treatment for tendonitis before the fall, Dr. Seidel diagnosed him with a "right shoulder strain" and Dr. Rabbitt diagnosed claimant with a "contusion and

sprain of the shoulder leading to impingement syndrome" after the fall and unrelated to his pre-existing condition. However, employer argues that because there was no significant difference between claimant's diagnosis and treatment before and after the workplace accident, this finding was in error. We disagree.

Based on the diagnoses and treatments authorized by Drs. Seidel, Rabbitt, and Vu, there was credible evidence to support the commission's finding that claimant's diagnoses and treatments before and after the workplace accident were different. Before the workplace accident, Dr. Weingold diagnosed claimant with "right shoulder pain which appears to be secondary to subacromial impingement syndrome and also possibly [acromioclavicular ] joint arthritis." Dr. Weingold also diagnosed "rotator cuff tendonitis, [acromioclavicular] joint arthritis, clinically improved." In contrast, after the workplace accident, Dr. Seidel diagnosed claimant with a shoulder contusion, possible cervical radiculopathy, cervical strain, and shoulder pain. Dr. Vu also diagnosed claimant with right shoulder pain and a contusion. Dr. Rabbitt diagnosed claimant with "contusion and sprain of the shoulder leading to impingement syndrome." Finally Dr. Weingold assessed claimant again after the workplace accident, diagnosing him with "right shoulder pain secondary to a combination of acromioclavicular joint arthritis and rotator cuff impingement." Thus, both before and after the accident, claimant was diagnosed with "right shoulder pain," and Dr. Weingold diagnosed claimant with acromioclavicular joint arthritis both before and after the accident. However, after the accident, Drs. Seidel, Rabbitt, and Vu also diagnosed claimant with a "contusion," "sprain," "possible cervical radiculopathy," and "cervical strain," conditions with which he had not been diagnosed previously. As a result, there was credible evidence that claimant's diagnoses before and after the workplace accident were different.

Similarly, there is credible evidence that claimant's medical treatment before and after the workplace accident differed. Before the workplace accident, Dr. Weingold treated claimant with an injection of Depo-Medrol combined with plain Xylocaine and Marcaine. Dr. Weingold recommended rest, ice, medication, and a gradual return to activity level. He mentioned the possibility of surgery involving "arthroscopic evaluation, with possible acromioplasty, distal clavicle excision and rotator cuff debridement or repair." After the workplace accident, claimant was treated with physical therapy and injections of Toradol and cortisone. Dr. Rabbitt recommended "an arthroscope of the shoulder, decompression of the subacromial space, removal of the spurs, and possible [acromioclavicular] joint resection." Thus, both before and after claimant's October 4, 2007 fall, claimant was given injections. However, the injections before and after the fall consisted of different drugs.

The surgical recommendations before and after the workplace accident also differed. Although arthroscopic evaluation of claimant's shoulder was suggested both before and after the workplace accident, only after the workplace accident was decompression of the subacromial space, removal of spurs, and possible acromioclavicular joint resection recommended. Furthermore, even if claimant's treatment did not change to a significant degree before and after the accident, this does not necessarily mean that claimant did not suffer a new injury, as the same treatment may be appropriate for more than one injury. Viewed in the light most favorable to claimant, claimant's diagnoses and treatments provided credible evidence that his shoulder injury was not related to his pre-existing condition.

### III. CONCLUSION

Because the evidence viewed in the light most favorable to claimant does not show that claimant failed to reveal his past shoulder problems to Dr. Seidel and Dr. Rabbitt, we hold that Clinchfield Coal Co., 229 Va. at 251-52, 329 S.E.2d at 16, is inapplicable and the commission

did not err in relying upon the doctors' opinions to conclude that claimant's shoulder injury was caused by his October 4, 2007 fall. In addition, there was credible evidence to support the commission's finding that claimant's shoulder injury was caused by his October 4, 2007 fall and not related to his pre-existing condition. Thus, credible evidence supported the commission's finding that claimant suffered a compensable injury by accident during the course of his employment with employer. Accordingly, we affirm.

<u>Affirmed.</u>