UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Malveaux
Argued at Charlottesville, Virginia

MOFFETT PAVING AND EXCAVATING AND
 UNITED CONTRACTORS OF VIRGINIA

MEMORANDUM OPINION* BY
v.      Record No. 0198-17-2      JUDGE MARY BENNETT MALVEAUX
                                  OCTOBER 24, 2017
DONALD KELLY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Michael P. Del Bueno (Megan Kerwin Clark; Whitt & Del Bueno,
> PC, on briefs), for appellants.
>
> Terry L. Armentrout (Armentrout & Armentrout, P.L.C., on brief),
> for appellee.

Moffett Paving and Excavating and United Contractors of Virginia ("employer") appeal a

decision of the Virginia Workers' Compensation Commission ("the Commission") finding that

Donald Kelly's ("claimant's") disability was related to his compensable work accident. On appeal,

employer contends that there was no credible evidence to support the Commission's finding that

claimant continued to be disabled as a result of his work accident. For the reasons that follow, we

affirm the Commission's decision.

## I. BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83,

608 S.E.2d 512, 517 (2005) (*en banc*).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Injury and Medical History

The record reflects that claimant had an extensive pre-injury medical history. Claimant injured his back after a fall in 1991. In 1995, claimant reported back pain following a car accident. Claimant was involved in an accident in 2000 when a dump truck he was driving tipped over, resulting in a right-wrist injury and head contusion. He also reported back pain at this time. In 2010, claimant was injured after he fell through a board on his deck and was thrown forward, hitting his head on the side of a pool. Following this injury, he reported pain in his head, neck, and low back, and was diagnosed with a concussion and a back contusion.

In 2013, claimant was seen by Dr. Scott Kohler for a social security disability evaluation due to arthritis, high blood pressure, diabetes, and benign prostatic hyperplasia. Claimant reported that he had experienced arthritis affecting his right arm, back, and legs since 2007.

On September 20, 2013, claimant reported low back pain after lifting a large rock at work. An x-ray of his lumbar spine was negative for any acute process, but did show moderate degenerative disc disease. He was diagnosed with a sub-acute back sprain. Claimant declined medication or a release from work duties.

A few months later, on December 12, 2013, claimant suffered the injury at work that is currently at issue. Claimant suffered a concussion, neck injury, and back injury after falling off of a backhoe he had just loaded onto a trailer. He was seen in the emergency room at Augusta Health. A CT scan of claimant's cervical spine showed multilevel degenerative disc disease. X-rays of claimant's lumbar spine, which were compared to claimant's x-rays taken on September 20, 2013, showed stable degenerative disc disease with no acute fracture or subluxation.

On January 6, 2014, claimant was seen by Dr. Matthew Pollard of The Spine Center. Dr. Pollard diagnosed claimant with post-concussion syndrome and cervical radiculopathy.

Dr. Pollard noted that claimant appeared to be "symptom[-]free" until his work injury. He referred claimant to a neurologist to manage his symptoms.

On January 14, 2014, Dr. Gregory Helm, a professor of neurosurgery at UVA Health System, examined claimant pursuant to Dr. Pollard's referral. Dr. Helm reviewed Dr. Pollard's notes and claimant's chart. Dr. Helm also reviewed claimant's cervical spine CT scan from December 12, 2013, which reflected some mild degenerative changes. After examining claimant, Dr. Helm noted that he was "grossly neurologically intact" but was having some right-sided arm weakness secondary to pain. Dr. Helm ordered additional diagnostic testing.

On May 12, 2014, Dr. Helm completed a questionnaire at the request of claimant's attorney. Dr. Helm reported that he diagnosed claimant with "neck pain after injury" in relation to his December 12, 2013 work accident. He opined that "[m]ore probably than not," claimant's neck pain was related to claimant's work injury, but noted that he did not have any "pre-accident" medical records.[1]

On May 20, 2014, claimant returned to the Augusta Health emergency room complaining of neck and right shoulder pain. An x-ray was completed and reviewed by the emergency room physician, who noted that "[c]onsidering history physical and rewrapped imaging the most likely cause of the muscle spasm likely secondary to traumatic fall some months ago."

On October 1, 2014, Dr. Helm completed another questionnaire at the request of claimant's attorney. In response to this questionnaire, Dr. Helm stated that he recommended a myelogram and head CT for claimant, and opined that claimant should not return to work until he had completed these tests. He stated that the need for these tests was directly related to the December 2013 work accident.

---

[1] Before the deputy commissioner, claimant testified that neither Dr. Pollard nor Dr. Helm asked about claimant's medical history or prior accidents.

On December 17, 2014, claimant completed the tests recommended by Dr. Helm. The myelogram revealed a congenitally narrow central canal with moderate stenosis, but no high-grade neuroforaminal stenosis present. The head CT showed no evidence of acute intracranial abnormality.

On January 23, 2015, claimant saw Dr. Kenneth Leone, an attending neurologist at UVA Health System. Dr. Leone reported that claimant denied a history of significant headaches prior to his December 2013 accident. Claimant reported chronic daily headache, chronic neck pain, right upper extremity pain and paresthesias, and chronic back pain since his work accident. Dr. Leone opined that claimant's daily headache was "likely representative of a posttraumatic, chronic migraine, triggered by a probable concussive head injury that he suffered in December 2013."

Prior Proceedings in the Commission

Claimant filed a claim for benefits on January 2, 2014, alleging that his head, back, and neck had been injured as a result of his December 12, 2013 work accident. He sought an award of medical and temporary total disability benefits. On June 13, 2014, the deputy commissioner found that claimant did suffer a compensable injury by accident as a result of his fall and awarded claimant benefits. Employer requested review of this opinion. On November 4, 2014, the full Commission affirmed the opinion of the deputy commissioner. Regarding causation, the Commission adopted the finding of the deputy commissioner that "[a]lthough the claimant may not have advised his physicians of prior injuries, this [was] not particularly relevant given the claimant's ability to function without restrictions until the day of his accident."

Independent Medical Evaluations and Employer's Applications for Hearing

On July 24, 2014, Dr. William Hereford completed an independent medical evaluation ("IME") of claimant. Dr. Hereford found that claimant's pain was "a continuous process dating

back to 1991" and opined that the December 12, 2013 injury "did not contribute to any of the problems he has and at the present time he is at his pre-injury status regarding back, shoulder, neck pain, etc." Dr. Hereford reported that claimant's "current" back diagnosis was "lumbar strain with degenerative disk disease," which he found unrelated to claimant's December 13, 2013 work accident. Additionally, he stated that claimant's "current" neck diagnosis was "degenerative disk disease with cervical disk bulging, possible nerve irritation, and all of this from his pre-injury problems." Dr. Hereford opined that claimant could return to his pre-injury job without work restrictions.

On August 26, 2014, Dr. Richard Wilson conducted an IME of claimant. Dr. Wilson's "current" back diagnosis was mild lumbar condition of degenerative osteoarthritis, unrelated to his work accident of December 2013. He diagnosed claimant's "current" neck problems as severe degenerative arthritis, and opined that this was caused by underlying degenerative age-related changes and not attributable to his December 2013 work accident. Dr. Wilson disagreed with Dr. Pollard's recommendations for treatment of cervical radiculopathy and post-concussion syndrome, opining that claimant did not need additional medical treatment in regard to the December 2013 work injury. Dr. Wilson opined that claimant was unable to return to his pre-injury job as a truck driver because of his cervical radicular condition, but that this inability was the result of a pre-existing condition that occurred prior to the December 2013 work injury. Dr. Wilson reported that claimant could perform work, with the restriction that it was sedentary in nature.

Employer filed applications for hearings in the Commission based upon the two IMEs.[2] On August 14, 2014, employer filed an application asking the Commission to terminate claimant's outstanding award because (1) claimant was released to pre-injury work on August 7, 2014, and (2) claimant's current disability was unrelated to the work accident, based upon Dr. Hereford's IME. On September 15, 2014, employer filed another application for hearing, asking the Commission to terminate claimant's outstanding award because claimant's current disability was unrelated to the industrial accident, based upon Dr. Wilson's IME.

At the July 8, 2015 hearing before the deputy commissioner, claimant testified that none of his doctors had released him to work. He admitted that he had not returned to Dr. Helm since diagnostic testing in late 2014.

On February 24, 2015, the deputy commissioner granted employer's applications. The deputy commissioner found that unlike Dr. Helm, the physicians who completed the IMEs had examined claimant's prior medical history, and their knowledge of that history established that claimant's current condition was no longer related to the December 2013 work accident.

On January 11, 2017, the full Commission issued an opinion reversing the deputy commissioner's decision. The Commission found that employer failed to prove that claimant's disability resulted from a cause other than the work injury, and also failed to prove that claimant was capable of returning to pre-injury work. Employer appeals this decision to our Court.

## II. ANALYSIS

On appeal, employer argues that the Commission erred in finding that claimant was still disabled as a result of the December 12, 2013 work accident.

---

[2] Employer filed these applications in August and September 2014, after the deputy commissioner had issued his initial opinion in this case but prior to review of that opinion by the full Commission. Employer's applications were placed on hold by the Commission until they had issued a review opinion addressing claimant's initial claim for benefits.

"On appeal, the Commission's findings of fact are conclusive and binding upon us if they are supported by credible evidence." Clinchfield Coal Co. v. Bowman, 229 Va. 249, 251, 329 S.E.2d 15, 16 (1985). Appellate courts "do not retry the facts before the Commission nor do [they] review the weight, preponderance of the evidence, or the credibility of witnesses." Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." Id. at 411, 302 S.E.2d at 510-11.

Pursuant to Code § 65.2-708(A), "upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award of compensation and on such review may make an award ending, diminishing or increasing the compensation previously awarded."

"Where . . . causal connection between an industrial accident and disability has been established by the entry of an award, an employer has a right to apply for termination of benefits upon an allegation that the effects of the injury have fully dissipated and the disability is the result of another cause." Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985). In order to terminate an award of benefits based upon a release to work, the injured employee must be "able fully to perform the duties of his preinjury employment." Id. "In an application for review of an award on the ground of a change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438, 339 S.E.2d 570, 572 (1986).

In the instant case, in the initial proceedings before it, the Commission found that claimant suffered a compensable injury resulting from his December 12, 2013 work accident and awarded claimant medical and temporary total disability benefits. A causal connection between

claimant's disability and the work accident was established by the entry of this award; thus, employer had the burden to prove that claimant's current disability was unrelated to the work injury. Employer contends that it met this burden. We disagree.

Employer claims that it proved that claimant's current disability was no longer related to his work accident because the IME reports were the only fully-informed, reliable medical opinions regarding disability and causation. Employer further contends that the Commission erred in relying on Dr. Helm's opinion because he had only treated claimant once in January 2014.

On July 24, 2014, Dr. Hereford opined that claimant's current back and neck conditions were unrelated to his December 12, 2013 work accident. Similarly, on August 26, 2014, Dr. Wilson opined that claimant's current conditions were unrelated to the work accident. Unlike Dr. Hereford, who found that claimant could return to his pre-injury job without restrictions, Dr. Wilson opined that claimant was unable to return to his pre-injury job as a truck driver because of his cervical radicular pain, but noted that this inability was unrelated to the work accident. Dr. Helm opined on October 1, 2014 that claimant's need for testing was related to his work accident. Further, claimant's symptoms continued, as he reported chronic daily headache, chronic neck pain, right upper extremity pain, and chronic back pain since his work accident as of January 2015.

In its review opinion, the Commission found that employer failed to prove that the effects of claimant's work accident had fully dissipated and that his disability resulted from another cause, pointing to evidence in the record of claimant's continued symptoms and Dr. Helm's relation of the need for testing to the December work injury. It further found that employer had not proven that claimant was capable of returning to pre-injury work, noting that Dr. Wilson

opined that claimant's cervical radicular condition prevented claimant from returning to his pre-injury work and that claimant denied having been released to pre-injury work.

Here, in its role as fact finder, the Commission weighed the medical evidence and was entitled to give greater weight to the opinion of Dr. Helm. We are bound by this determination on appeal, as "a question raised by conflicting medical opinion is a question of fact." Johnson, 229 Va. at 120, 326 S.E.2d at 690. Moreover, employer's contentions about the frequency and timing of Dr. Helm's treatment only implicate the weight of his evidence, a matter properly reserved for the Commission. "Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the [C]ommission . . . ." Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990). The Commission was free to determine whether Dr. Helm's interaction with claimant was substantial enough to credit his medical opinions. Although claimant's interaction with Dr. Helm was fairly minimal, this in itself does not render his expert medical opinion inherently unreliable.

Additionally, employer argues that Dr. Helm's opinions were entitled to no weight because he was unaware of claimant's prior medical history. Employer claims that Dr. Helm was unaware of claimant's extensive treatment and diagnostic testing for the same body parts injured in the work accident; therefore, he was unable to render a credible opinion on whether claimant's ongoing symptoms and disability were causally related to his work accident or to a pre-existing condition. Employer relies on Clinchfield Coal Co., 229 Va. at 252, 329 S.E.2d at 16, for the proposition that when a medical opinion is based upon an incomplete or inaccurate medical history, the Commission is entitled to conclude that the opinion is of little probative value. However, Clinchfield Coal is not controlling under the circumstances of this case.

In Clinchfield Coal, the treating physician's first report diagnosed the claimant based only on the medical history related to him by the claimant. Id. at 250, 329 S.E.2d at 16. The physician later reviewed the claimant's medical records, which revealed a relevant prior injury, and he completed a second report changing his causation opinion. Id. at 251, 329 S.E.2d at 16. The Commission credited the first report, but the Supreme Court reversed, finding that the first diagnosis of causation rested on a "faulty premise" based on incomplete information. Id. at 252, 329 S.E.2d at 16.

In Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 598 S.E.2d 750 (2004), we clarified the holding of Clinchfield Coal on facts similar to the instant case. In Amelia Sand, the employer argued that the testimony of the claimant's treating physicians was "incredible, as a matter of law, because these doctors did not have the claimant's full medical history regarding his psychiatric and substance abuse problems." Id. at 409, 598 S.E.2d at 751. Amelia Sand cites Clinchfield Coal in support of this proposition. Our Court disagreed, holding that

> Clinchfield Coal does not stand for the proposition that doctors must have the entire medical history of an individual before they can state a valid opinion about the cause of a condition. Instead, Clinchfield Coal requires that the [C]ommission ignore an earlier, "mere opinion" by an expert who revises and rejects that earlier opinion in favor of a new opinion which is based on a more complete review of the facts in the case.

Id. at 410, 598 S.E.2d at 752. The Court found that even though the doctors did not have access to all of the claimant's medical records, their opinions were not incredible because the "record d[id] not indicate claimant lied to his doctors or that the doctors had rejected their earlier opinions and determined claimant's accident had no relationship to his current depression." Id. at 412, 598 S.E.2d at 753. Further, "[n]othing in the medical testimony suggested they believed more information on claimant's background was necessary before stating an opinion on causation." Id. at 413, 598 S.E.2d at 753.

Likewise, Clinchfield Coal does not apply to this case. In this case, Dr. Helm did not base his medical opinions on "assumptions," but rather upon his examination of claimant, claimant's medical chart, Dr. Pollard's notes, and a cervical spine CT. Dr. Helm never revised or rejected his opinion that claimant's neck injury was more likely than not caused by the December 12, 2013 work accident. As Dr. Helm never revised his earlier opinion and did not base his medical opinion on a faulty assumption, Clinchfield Coal does not control.

The burden was on employer to prove by a preponderance of the evidence that claimant's disability was no longer related to his work injury. Employer failed to meet this burden of proof. Dr. Helm's opinion, despite not having the benefit of claimant's complete medical history, was not based upon mere assumptions and the Commission did not err in crediting it. Although employer alleges that its medical experts were the only physicians that the Commission should have credited due to their knowledge of claimant's medical history, this was a decision regarding the weight of medical evidence left properly to the Commission. A review of the record demonstrates credible evidence in support of the Commission's determinations that employer failed to prove that claimant's disability was no longer related to his work injury, and also that employer failed to prove that he was able to return to work. Accordingly, we find that the Commission did not err in finding that claimant continued to be disabled as a result of his December 12, 2013 work accident.

## III. CONCLUSION

For the reasons above, we affirm the Commission's decision.

Affirmed.