UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and Russell
Argued at Leesburg, Virginia

HYATT PLACE-CHANTILLY DULLES AND
 HYATT CORPORATION
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0498-19-4                     JUDGE WESLEY G. RUSSELL, JR.
                                                         OCTOBER 22, 2019
VIRGINIA ALVARENGA


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Michael S. Bliley (Andrew M. Alexander; Siciliano, Ellis, Dyer &
            Boccarosse PLC, on brief), for appellants.

            Andrew S. Kasmer for appellee.


        Hyatt Place-Chantilly Dulles and Hyatt Corporation (collectively "employer") appeal the

Commission's award of benefits to Virginia Alvarenga ("claimant").  Employer asserts that the

Commission erred in concluding that the back surgery and related treatment sought by claimant

"is reasonable, necessary, and causally related to the work accident."  In support of this assertion,

employer argues that "[t]here is no credible evidence to support the Commission's" conclusion.

We disagree and affirm the judgment of the Commission.

                                    BACKGROUND

        On appeal, "[t]his Court must view the evidence in the light most favorable to the

prevailing party before the [C]omission[,]" in this case the claimant.  Samartino v. Fairfax Cty.

Fire & Rescue, 64 Va. App. 499, 502-03 (2015).  So viewed, the evidence established that in

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

June 2017, claimant was employed as a housekeeper for employer. Her duties included cleaning, making beds, and lifting and moving forty-pound mattresses.

On June 18, 2017, claimant slipped and fell while cleaning rooms for employer. According to the first report of incident, she slipped on slippery substances that were on the floor. That day claimant sought treatment at Patient First. The "COMPLAINT" section of the Patient First record from the day of the accident indicates that claimant had suffered a "Fall" and was seeking treatment for her "*Back*/Neck/[and] L[eft] Arm Pain." (Emphasis added). Later that day, she was seen in a local emergency room, where she continued to complain of back, hip, and shoulder pain.

Throughout the summer and early fall of 2017, claimant continued treating with various healthcare providers, including Drs. Scott, Iyer, Novak and Sabeet, for the injuries she suffered in the June 18, 2017 accident. Eventually it was determined that she had suffered a torn left rotator cuff in the accident, and she had surgery to address the tear.

When claimant sought benefits related to the accident, employer initially accepted the claim as compensable, and the parties submitted an agreement form to the Commission for approval. By an award order entered on October 19, 2017, the Commission approved the agreement of the parties and awarded claimant both temporary total disability benefits and lifetime medical benefits related to the injuries she suffered. Specifically, the Commission, consistent with the agreement of the parties, awarded "Lifetime Medical benefits . . . for reasonable, necessary and authorized medical treatment for the following body parts *injured during the . . . workplace injury of June 18, 2017*: head contusion, left shoulder rotator cuff tear, [and] *back strain*[.]" (Emphasis added).

On November 20, 2017, employer, by counsel, informed the Commission that employer no longer consented to the award order and moved to "vacate the award order entered on

- 2 -

"10/19/17." Consistent with its rules, the Commission granted employer's request to vacate the award, and claimant responded by requesting that the Commission place her claim for benefits and related issues on the hearing docket.

On December 18, 2017, counsel for employer executed on employer's behalf another award agreement form, indicating that employer was, once again, accepting the claim. The award agreement form notes that the "Body Parts/Injuries Accepted" by the employer are as follows: "head contusion, left shoulder rotator cuff tear, *back strain*, [and] neck[.]" (Emphasis added). Counsel for claimant executed the award agreement form on January 18, 2018, and forwarded it to the Commission.

On February 6, 2018, the Commission approved the latest agreement of the parties and awarded claimant both temporary total disability benefits and lifetime medical benefits related to the injuries she suffered. Specifically, the Commission, consistent with the latest agreement of the parties, awarded "Lifetime Medical benefits . . . for reasonable, necessary and authorized medical treatment for the following body parts *injured during the . . . workplace injury of June 18, 2017*: head contusion, left shoulder rotator cuff tear, *back strain*, [and] neck[.]" (Emphasis added). As it had done with the initial agreed award, employer again agreed that claimant had suffered a back injury in the June 18, 2017 accident.

On January 19, 2018, claimant sought treatment from Dr. Ronald Childs to address the neck and back pain she was experiencing. Dr. Childs' note references the June 2017 work accident. As a result of his examination and evaluation of claimant, Dr. Childs prescribed epidural injections to address claimant's pain.

Claimant undertook the course of epidural injections as prescribed by Dr. Childs, but the injections did not relieve her neck and back pain. She returned to Dr. Childs regarding these symptoms on April 5, 2018. In his note of that date, he states that the claimant "present[ed]

today for a workman's comp follow up of cervical pain and injury sustained in June 2017 after a fall" and that, despite the injections, "her pain remains unchanged and is localized in the neck and the back." Based on his examination and evaluation of claimant, Dr. Childs recommended that claimant undergo back surgery, specifically a "transforaminal lumbar laminectomy and interbody fusion at L5-S1[.]" He concluded that the work accident had exacerbated a pre-existing condition.

Employer declined to pay for the recommended surgery. Accordingly, on May 8, 2018, claimant filed a claim with the Commission seeking "[a]uthorization for back surgery" and authorization for continued treatment with Dr. Childs.

In its attempt to demonstrate that the requested surgery and continued treatment were neither reasonable, necessary nor causally related to the work accident, employer sent Dr. Childs a July 19, 2018 letter (hereinafter "questionnaire") containing historical information about claimant and sought responses to certain questions. In the questionnaire, employer informed Dr. Childs that claimant had been involved in three motor vehicle accidents and three work-related accidents between July 1998 and March 2010 and that she had suffered injuries to her neck, right arm, right shoulder, and back in these accidents. In addition, the questionnaire stated as fact employer's view that, at the time of the June 18, 2017 accident, claimant's "only complaints involved the L[eft] shoulder. She expressed no complaints of any other body parts (neck or back) until she was returned to work." The questionnaire continued by noting that, when employer had authorized the initial treatment session with Dr. Childs, it "was not aware of [claimant's] extensive history of MVA and workplace injuries" and that, as a result of learning about that history, employer had "considerable concerns that her current symptoms are not related to the June 18, 2017 incident."

Having provided Dr. Childs with what it viewed as the appropriate history, employer then asked Dr. Childs to answer multiple questions in light of "this new history[.]" The questions included whether the current issues related to the June 18, 2017 accident, whether claimant had back and neck issues that pre-existed the June 18, 2017 accident, whether any pre-existing issues were "degenerative in nature," and whether she had reached maximum medical improvement.

In undated responses handwritten on the questionnaire he was sent, Dr. Childs provided responses to the questions.[1] Most pertinent to this appeal was his answer to the first question: "Are current issues/complaints related to the 6/18/17 accident?" Dr. Childs responded, "By history-no."

In addition to Dr. Childs' response to the questionnaire, employer obtained a September 10, 2018 Independent Medical Examination of claimant by Dr. Dhruv Pateder. Dr. Pateder, who had not treated claimant previously, conducted a seven-minute examination of claimant. In his report of that examination, not only did Dr. Pateder conclude that the requested surgery was unnecessary and unrelated to the June 18, 2017 work accident, but also he opined that claimant "did not sustain any injury whatsoever to the neck or low back as it relates to the work accident of 06/18/17." Although he acknowledged that claimant "had some initial complaints of" neck and back pain after the accident, he stated his belief that, after some initial treatments, "she had no further complaints of neck or low back pain." He went on to attribute her current back or neck symptoms to prior accidents/pre-existing conditions, stating that any such problems were not "exacerbated by the work accident." He concluded by opining that claimant had reached

---

[1] Although Dr. Childs' response was undated, the questionnaire itself was dated July 19, 2018. Employer did not timely provide a copy to claimant's counsel. Claimant's counsel first became aware of Dr. Childs' response when he checked his office fax machine the morning of October 4, 2018, the day of the hearing before the deputy commissioner. At the hearing, counsel for employer acknowledged that the information should have been provided to opposing counsel earlier, but offered no reason for the failure to provide the information in a timely fashion.

"maximum medical improvement[,]" did "not need any further care whatsoever[,]" and could "return to her regular duty job."

A hearing on claimant's request for authorization for back surgery and continued treatment with Dr. Childs was held before a deputy commissioner on October 4, 2018.[2] Regarding whether the surgery and further requested treatment were medically necessary and causally related to the June 18, 2017 work accident, claimant relied upon the opinion documented in Dr. Childs' April 5, 2018 treatment note and the opinion of Dr. Sabeet, a treating physician who also had recommended back surgery. Regarding any suggestion that claimant had not suffered a back injury on June 18, 2017, claimant relied upon the medical opinions and the Commission's prior order, entered with the agreement of employer, that conclusively established that claimant had suffered a back injury in the June 18, 2017 work accident.

Employer defended the claim by relying on Dr. Childs' response to the questionnaire, the opinion of Dr. Pateder, and an answer that claimant gave while testifying at the hearing. Claimant, whose command of English is such that she testified through the use of an interpreter, answered in the affirmative when asked if she first "reported" back pain when she saw Dr. Sabeet in 2017.[3]

The deputy commissioner concluded that the requested back surgery was "reasonable, necessary and causally related to the accident of June 18, 2017." In doing so, the deputy

---

[2] That hearing also addressed employer's May 2, 2018 application seeking termination of claimant's outstanding wage award in light of her return to light-duty work in May 2018 and claimant's September 28, 2018 application seeking payment of partial wage loss benefits from May 2, 2018 forward. The resolution of these respective applications is not the subject of this appeal; therefore, we do not address them here.

[3] We note that, at the hearing, claimant was asked when she first "reported" back pain, not when she first experienced it. The medical records demonstrate that she reported back pain on multiple occasions before her first visit with Dr. Sabeet. Furthermore, the Commission's February 6, 2018 order conclusively established that claimant injured her back in the June 18, 2017 workplace accident.

commissioner gave significant weight to the opinions of Dr. Childs as expressed in his April 5, 2018 treatment note that the surgery was necessary and was the result of the accident exacerbating a pre-existing condition.

In reaching this conclusion, the deputy commissioner rejected the contrary opinions of Dr. Pateder and Dr. Childs as expressed in his undated response to the questionnaire. Regarding Dr. Pateder's opinion, the deputy commissioner found that it was "premised on inaccurate and incomplete information" and specifically noted that Dr. Pateder's conclusion that claimant did not suffer a neck and back injury in the work accident "is in direct conflict with the Commission's [previous] award of medical benefits for the neck and back" injury suffered in the June 18, 2017 work accident. The deputy commissioner went on to note that there was no indication that "Dr. Pateder considered or was even aware of" relevant information regarding claimant's ability to work prior to the June 18, 2017 accident. As a result, the deputy commissioner afforded Dr. Pateder's opinion "little probative weight[.]"

The deputy commissioner similarly discounted Dr. Childs' response to the questionnaire. Specifically, the deputy commissioner did

> not find Dr. Childs' questionnaire response [to be] reliable. Dr. Childs was informed of the claimant's prior accidents, but he was not provided with any medical records for her treatment following those accidents. More importantly, Dr. Childs was misinformed about the claimant's complaints following the subject work accident. As noted above, Dr. Childs was told the claimant had not complained about her back and that her only complaint at that time related to the left shoulder. This in inaccurate. The June 18, 2017 office note from Patient First shows the claimant's symptoms after the accident included neck and back pain.

Employer appealed the decision of the deputy commissioner to the full Commission, which unanimously affirmed the decision of the deputy commissioner. In coming to its decision, the Commission gave the most weight to Dr. Childs' opinion as expressed in his treatment note regarding the visit of April 5, 2018.

- 7 -

The Commission did not give credence to Dr. Childs' questionnaire response. Like the deputy commissioner, the Commission found the response was "based upon an inaccurate history as provided by [employer] and is entitled to little weight." Furthermore, the Commission rejected employer's argument that claimant had not complained of back pain initially, recognizing that this argument was inconsistent with the initial treatment record from Patient First and, ironically, was contradicted by Dr. Pateder's review of the records, which revealed that claimant had complained of back pain on the day of the accident.

The Commission also was unpersuaded by the relevant opinions offered in Dr. Pateder's IME report. The Commission noted that Dr. Pateder's report assumed that "claimant did not sustain an injury to her low back" on June 18, 2017, and that such an assumption was inconsistent with the Commission's previously entered order that conclusively established that claimant had, in fact, suffered a back injury in the workplace accident. The Commission went on to state that "[r]egardless" of Dr. Pateder's error, the opinion expressed in Dr. Childs' April 5, 2018 treatment note that the surgery was necessary and related to the work accident "deserves the most weight."

Employer now appeals to this Court. In its sole assignment of error, it asserts that there was "no credible evidence to support the Commission's determination that the proposed surgery is reasonable, necessary and causally related to the work accident."

ANALYSIS

I. Standard of Review

In essence, employer argues that the evidence was insufficient to allow the Commission to conclude "that the proposed surgery is reasonable, necessary and causally related to the work accident." As such, employer necessarily challenges the factual and credibility determinations of the Commission.

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706. Virginia's appellate courts "do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses." Jeffreys v. Uninsured Emp'r's Fund, 297 Va. 82, 87 (2019) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). Thus, factual determinations made by the Commission will be disturbed on appeal only if "plainly wrong or [they lack] credible evidence to support them." Turner Gilbane JV v. Guzman, 59 Va. App. 128, 133 (2011) (quoting Georgia Pac. Corp. v. Dancy, 17 Va. App. 128, 135 (1993)).[4]

II. An Employer's Obligation to Pay for Medical Treatment

Once an award of lifetime medical benefits is entered for a particular injury, an employer is obligated to pay for any treatment that is authorized,[5] reasonable, necessary, and causally related to the work accident. Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199-200 (1985); see also Code § 65.2-603(A)(1) ("As long as necessary after an accident, the employer

---

[4] We have recognized that a challenge to the medical necessity of a particular treatment represents a mixed question of law and fact entitled to *de novo* appellate review. See, e.g., Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556 (2011). In Harris, a treating physician issued "a non-specific, generalized and generic physician's prescription for treatment" in a spa pool. Id. at 562. The claimant sought to have the employer reimburse him for his purchase of a home hot tub capable of seating six people. Id. at 560-61. He did so even though the doctor's "prescription did not call for a 'home' spa pool, nor did it call for a spa pool capable of seating six people. In other words, [the doctor] never prescribed this specific appliance." Id. at 566. Finding that whether the spa pool claimant purchased was within the scope of the doctor's prescription presented a mixed question of law and fact, we concluded that "the [C]ommission's findings in this case as to the necessity of the claimant's purchase of a home spa pool are not binding upon this Court." Id. at 563-64. The instant case presents no such issue as to the scope of the prescribed treatment. Although employer challenges the necessity of any surgery at all, it does not assert that the surgery claimant seeks in any way exceeds the scope of what was recommended by Dr. Childs in his April 5, 2018 treatment note.

[5] There are circumstances in which a claimant may be entitled to reimbursement for unauthorized medical treatment that proves to be reasonable, necessary, and causally related to a work accident. See Yahner v. Fire-X Corp., 70 Va. App. 265, 278 (2019). Given the Commission's conclusion that the surgery at issue was recommended by Dr. Childs, an authorized treating physician, the requested surgery in this case is "authorized."

shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention."). Here, consistent with the prior agreement of the parties and the February 6, 2018 order of the Commission, claimant had been awarded "Lifetime Medical benefits . . . for reasonable, necessary and authorized medical treatment for the . . . body parts injured during the" June 18, 2017 work accident. As reflected in the Commission's February 6, 2018 order, the parties also agreed that claimant's back was one of the body parts injured in the June 18, 2017 work accident. Accordingly, employer was obligated to pay for any reasonable treatment related to the back injury that was necessitated by the work accident.

It is a claimant's burden to establish that a proposed course of treatment is reasonable, necessary, and causally related to the work accident. Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 599 (2012). The question presented by this appeal is whether claimant carried that burden. Reviewing the evidence and the inferences that reasonably may be drawn from that evidence in the light most favorable to claimant because she was the prevailing party below, Anderson v. Anderson, 65 Va. App. 354, 361 (2015), it is clear that she did.

### III. Conflicting Evidence Regarding the Surgery

In support of her claim that the surgery was reasonable, claimant relied on opinions given by not one, but two, treating physicians. Dr. Sabeet, who saw claimant regarding her back and neck pain on multiple occasions between September 2017 and February 2018, concluded back

surgery was appropriate to address claimant's symptoms, which his initial note tied to the work accident.[6]

In addition to Dr. Sabeet's opinion, claimant offered the opinion of her authorized treating physician, Dr. Childs. In his April 5, 2018 treatment note, Dr. Childs recorded that claimant was being seen "for a workman's comp follow up of cervical pain and injury sustained in June 2017 after a fall" and for "pain [that] remains unchanged and is localized in the neck and back." He opined that the symptoms related to the work accident represented an "aggravation of [a] pre-existing condition." Having attempted "conservative management" to address the symptoms, Dr. Childs recommended the back surgery for which claimant eventually sought authorization.[7]

Employer countered by offering the IME opinion of Dr. Pateder and Dr. Childs' response to the questionnaire. The existence of these contrary opinions created a conflict in the medical evidence. It is the function of the Commission as factfinder to resolve such conflicts. See, e.g., Donovan v. United Parcel Serv., Inc., 63 Va. App. 438, 445 (2014); Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5 (2000). This principle holds true even when the conflict stems from inconsistencies in the evidence offered by a single medical witness. Cf. United Airlines, Inc. v.

---

[6] In the history that employer provided Dr. Childs in the July 19, 2018 questionnaire, employer refers to Dr. Sabeet's involvement as a course of "unauthorized treatment[.]" This statement was misleading at best. On April 5, 2018, the Commission entered a "STIPULATED ORDER" at the request of the parties. The order reflects employer's agreement "to be responsible for the treatment incurred with Dr. Sabeet, including the bills from September 28, 2017, through February 2, 2018, in accordance with the Act[.]" Thus, even if the treatment were unauthorized when it was rendered, it had been accepted and effectively authorized before employer sent the letter to Dr. Childs on July 19, 2018. At oral argument in this Court, employer candidly conceded that at the time it sent the questionnaire to Dr. Childs, Dr. Sabeet's treatment was authorized.

[7] At oral argument in this Court, employer, with commendable candor, conceded that, standing alone, the opinions of Dr. Sabeet and Dr. Childs, as expressed in his April 5, 2018 treatment note, were sufficient to sustain claimant's burden to establish that the surgery was reasonable, necessary, and causally related to the work accident.

- 11 -

Hayes, 58 Va. App. 220, 243 (2011). Unless such inconsistencies render the evidence inherently incredible, it remains "within the province of the [C]ommission, as the finder of fact, to determine" which conflicting medical opinions "to credit . . . and, if so, which aspects of" such opinions it believes. Id. Absent extraordinary circumstances, such a conflict in the evidence is nothing more than a credibility contest, and, as noted above, we defer to the Commission's credibility determinations. Jeffreys, 297 Va. at 87.

Here, the Commission credited the medical opinions relied upon by claimant and discounted those offered by employer. In doing so, the Commission explained why it did not credit employer's medical evidence. Regarding Dr. Pateder, the Commission noted that his opinion was premised on his conclusion that claimant "did not sustain any injury to her low back" in the June 18, 2017 workplace accident. Such a premise, and the resulting conclusion that flowed from it, is necessarily false because the parties' prior agreement, memorialized in the Commission's February 6, 2018 order, conclusively established that claimant had, in fact, suffered a back injury in the workplace accident.[8] As a result, the Commission reasonably discounted Dr. Pateder's opinion. See Sneed v. Morengo, Inc., 19 Va. App. 199, 205 (1994) ("Whenever a physician's diagnosis flows from an assumption that rests upon a faulty premise . . . , the [C]ommission may refuse, and often will be required to refuse, to attribute any weight to that opinion.").

Regarding Dr. Childs' response to the questionnaire, the Commission found that it was "entitled to little weight," and thus, did not offset the opinion that Dr. Childs had rendered in his

---

[8] This is not to suggest that employer could not challenge the need for this particular surgery or argue that the surgery, to the extent it was needed, was unrelated to the back injury suffered in the June 18, 2017 workplace accident. What employer could not do was attempt to relitigate the question of whether or not claimant had suffered a back injury in the workplace accident because that issue had been resolved conclusively by the Commission's prior order. See generally Brock v. Voith Siemens Hydro Power Generation, 59 Va. App. 39 (2011) (holding that final orders of the Commission are entitled to preclusive effect).

April 5, 2018 treatment note. Although the questionnaire may have provided Dr. Childs with additional information about claimant's prior work and motor vehicle accidents, the Commission discounted the response because employer had provided "an inaccurate history" to Dr. Childs. At oral argument in this Court, employer candidly conceded that there were multiple aspects of the history it provided to Dr. Childs in the questionnaire that were inaccurate, including the statements that, on the day of the accident, claimant's "only complaints involved the L[eft] shoulder" and that claimant "expressed no complaints of any other body parts (neck or back) until she was returned to work." To the extent that it concluded that Dr. Childs' response to the questionnaire was affected by the inaccurate history provided by employer, the Commission was free to reject the conclusion expressed. Sneed, 19 Va. App. at 205.

There was ample reason for the Commission to conclude that Dr. Childs' "new" opinion expressed in response to the questionnaire was tied to the inaccurate history provided by the employer. Dr. Childs provided his handwritten answers to the questions on the face of the questionnaire itself, with his responses appearing next to the questions, which, in turn, were directly below the inaccurate history. Furthermore, Dr. Childs' answer to the question of whether the back problems for which surgery was recommended was related to the work accident strongly suggests that the history provided by employer played a role in his "new" opinion. Specifically, he responded, "*By history*- no." (Emphasis added). The Commission reasonably could conclude that Dr. Childs' response to the questionnaire was based upon the inaccurate history provided by employer, and thus, the Commission did not err in "refus[ing] to attribute any weight to that opinion." Sneed, 19 Va. App. at 205.

Claimant offered sufficient medical evidence to establish that the requested surgery was reasonable, necessary, and causally related to the work accident.[9] The Commission, as factfinder, permissibly credited that evidence and rejected the conflicting evidence. Accordingly, the Commission did not err in concluding that employer was obligated to pay for the requested surgery and related treatment with Dr. Childs.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission.

Affirmed.

---

[9] In an ironic twist, employer argues that the Commission was required to reject the opinion of Dr. Childs that was set forth in his April 5, 2018 treatment note because, according to employer, it was based on a faulty premise. Employer asserts that the opinion was based on the mistaken belief that claimant "suffered from persistent back pain from the date of the accident." Based on the medical evidence in the record and the reasonable inferences drawn therefrom, the Commission reasonably found that "[t]he claimant's symptoms [of back pain] were . . . recorded as persistent by Drs. Sabeet and Childs" throughout their care and treatment of her. Accordingly, the Commission did not err in concluding that the opinion of Dr. Childs as reflected in his April 5, 2018 treatment note was not "based upon a faulty premise."